## In the Interest of Jonathan PECHT and Adam Pecht, Children [1].

### No. 06–93–00082–CV.

Court of Appeals of Texas, Texarkana.

March 30, 1994.

Rehearing Denied April 26, 1994.

---

1. This case originally came to this court styled "Gerard George Pecht v. Nancy Korte Pecht." The state legislature has eliminated the adversarial styling of petitions and motions in the family law context. Pleadings in a divorce or annulment suit should be entitled "In the Matter of the Marriage of _____ and _____." Tex.Fam.Code Ann. § 3.51 (Vernon 1993). The petition and other documents in a suit affecting the parent-child relationship should be entitled "In the interest of _____, a child." Tex.Fam.Code Ann. § 11.-08(a) (Vernon 1986). This case, like many other domestic relations cases, was improperly titled in the pre-Code style. We have retitled this proceeding so as to conform it to the legislative mandate.

Kevin Dubose, Holman Hogan, Houston, for appellant.

Dianne Richards, T. Wayne Harris, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

BLEIL, Justice.

Gerard Pecht appeals from an order modifying his child support obligation. The primary issue on appeal is whether the trial court abused its discretion in modifying the child support order. Pecht also questions the trial court's award of attorney's fees. We find no abuse of trial court discretion in modifying the support order or in awarding attorney's fees which have support in the evidence. We modify the judgment to set aside the attorney's fees which are not supported by the evidence and, as modified, we affirm.

The Pechts divorced in 1988 and were appointed as joint managing conservators of their two sons, Jonathan, born in 1983, and Adam, born in 1985. Nancy Pecht has primary custody of the children. Under the terms of the divorce decree, Gerard Pecht paid child support of $900.00 a month, fifty percent of the children's private school tuition, and fifty percent of any uninsured medical expenses incurred by the children.

In March 1990, an agreed order modifying Gerard Pecht's child support obligation was entered. Under that order, in addition to the support ordered in the divorce decree, Gerard Pecht was required to pay two-thirds, instead of one-half, of the monthly tuition costs for the private school, not to exceed $800.00 a month for both children. At the time of the hearing, Jonathan attended a private school with an annual tuition cost of $7,500.00. Gerard Pecht was also ordered to pay $320.00 per month as long as his ex-wife employed a full-time housekeeper who worked at least two days a week at his home; however, the housekeeper stopped working at Gerard Pecht's home in June 1992 and now works only for Nancy Pecht.

In 1992, Nancy Pecht filed a motion to modify the child support order. The issue of child support was tried to the court. In May 1993, the trial court entered an order requiring Gerard Pecht to pay a flat amount of $3,500.00 for monthly child support.[2] The order from which he now appeals.

---

2. Pecht was paying an average of $1,384.00 in monthly child support before the entry of the

trial court also issued findings of fact and conclusions of law.

## CHILD SUPPORT

■ Gerard Pecht contends that the trial court abused its discretion by increasing his child support obligations in the absence of evidence of a corresponding increase in the needs of the children since the previous order in March 1990 and by considering the ability of the parents to contribute to the support of the children.

■ The trial court has the authority to modify a child support order if the circumstances of the child or a person affected by the order or portion of the decree to be modified have materially and substantially changed since the date of its rendition. TEX. FAM.CODE ANN. § 14.08 (Vernon 1986 & Supp.1994). The trial court may consider the guidelines for the support of a child that are set forth in the Family Code when determining whether there has been a material and substantial change in circumstances that warrants a modification of an existing child support order if the modification is in the best interest of the child. TEX.FAM.CODE ANN. § 14.056(a) (Vernon Supp.1994). An increase in the needs, standard of living, or lifestyle of the obligee since the rendering of the existing order does not warrant an increase in the obligor's child support obligation. *Id.*

■ The court's child support order will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion.[3] *See Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ) (citing to *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991)). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Worford*, 801 S.W.2d at 109.

■ At the time of the hearing appealed from, Gerard Pecht had monthly net resources of $15,874.00. When the obligor's net monthly resources exceed $4,000.00,[4] the trial court presumptively applies the percentage guidelines set forth in the statute to the first $4,000.00 of the obligor's net resources. The court may then order additional amounts of child support, depending on the proven *needs of the child at the time of the order.*[5] TEX.FAM.CODE ANN. § 14.055(c), *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 766, § 9, 1993 Tex.Gen.Laws 2989, 2997–98. Other provisions in the Family Code list other factors the trial court may consider when

---

**3.** Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). In reviewing a no evidence point of error, we consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). In reviewing the factual sufficiency of the evidence, we examine all of the evidence. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 458 (Tex.1989). The finding will be set aside only if the evidence standing alone is too weak to support the finding, or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

**4.** Effective September 1, 1993, the amount is $6,000.00. *See* TEX.FAM.CODE ANN. § 14.055(a) (Vernon Supp.1994).

**5.** The legislature has changed this provision, effective September 1, 1993. The new statute reads:

> Without further reference to the percentage recommended by these guidelines, the court may order additional amounts of child support as appropriate *depending on the income of the parties and the proven needs of the child.*

TEX.FAM.CODE ANN. § 14.055(c) (Vernon Supp. 1994) (emphasis added). These amendments to the statute apply to original or modified orders made on or after September 1, 1993, and do not affect an order in a suit affecting the parent-child relationship made before the effective date of the act, nor do the amendments constitute a change in circumstances for purposes of modifying a previous child support order. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 766, § 11, 1993 Tex. Gen.Laws 2989, 2999.

determining the amount of child support to award. *See* TEX.FAM.CODE ANN. §§ 14.-052(b), 14.054 (Vernon Supp.1994). These factors, however, apply only to the first $4,000.00 of net resources. *Rodriguez v. Rodriguez,* 860 S.W.2d 414, 417 (Tex.1993).[6] Although *Rodriguez* involved the initial determination of child support to be included in the divorce decree, the reasoning of *Rodriguez* has been extended to cases involving the modification of a prior child support order. *See Mai,* 853 S.W.2d at 622 (following *Rodriguez v. Rodriguez,* 834 S.W.2d 369 (Tex.App.—San Antonio 1992), *rev'd on other grounds,* 860 S.W.2d 414 (Tex.1993)).

▆▆▆ The trial court ordered Gerard Pecht to pay $3,500.00 in monthly child support. Under *Rodriguez,* the first $1,000.00 of this amount is a presumptive award based on the statutory percentage guidelines.[7] Absent a contrary explanation by the trial court in its findings of fact, this presumptive award can encompass a number of factors that are not limited to the needs of the children. *Rodriguez,* 860 S.W.2d at 418. The additional $2,500.00 must be based solely on the needs of the children.[8] *See id.; see also Golias v. Golias,* 861 S.W.2d 401, 404 (Tex. App.—Beaumont 1993, n.w.h.) (applying the rules set forth in *Rodriguez*).

▆▆▆ The supreme court has declined to affirmatively define the term "needs," but has held that it does not include the lifestyle of the family or the income of the parties. *Rodriguez,* 860 S.W.2d at 417 n. 3. The supreme court, however, has further indicat-ed that the child's needs are not limited to the bare necessities of life. *Id.* at 417 n. 3. The best interest of the child is the primary consideration when determining the child's needs. TEX.FAM.CODE ANN. § 14.07(a) (Vernon Supp.1994); *Rodriguez,* 860 S.W.2d at 417 n. 3.

Both of the children have required psychotherapy. The children began seeing Sophia Havasy, a licensed clinical psychologist, in the spring and summer of 1992. Havasy testified at the trial. Based on Havasy's testimony, as well as Nancy Pecht's testimony, the trial court found that the Pechts' youngest son, Adam, has an attention deficit-hyperactivity disorder and suffers from an avoidant disorder with childhood, i.e., he has problems relating with children his own age; and that the oldest son, Jonathan, also has an attention deficit-hyperactivity disorder, suffers from a severe language learning disability, has motor planning difficulties, and is dyslexic. Havasy also testified that Jonathan has difficulty managing his emotional state and can be aggressive.

Both of the boys require medication to control their attention deficit disorder. Nancy Pecht was unable to estimate the monthly cost of the boys' prescriptions. Havasy also thought it would be necessary to work with the Pechts to come up with a behavioral plan to structure and manage the boys when they are at either parent's home. Havasy emphasized the need that children with an attention deficit disorder have for consistency and routine.

---

6. Gerard Pecht argues that the trial court abused its discretion by considering the ability of the parents to contribute to the support of their children; however, this is a factor the trial court is statutorily authorized to consider, at least as to Pecht's first $4,000.00 in net resources, when varying from or when following the statutory child support guidelines. *See* TEX.FAM.CODE ANN. § 14.052(b)(2) (Vernon Supp.1994).

7. The applicable percentage for two children is twenty-five percent. TEX.FAM.CODE ANN. § 14.-055(b) (Vernon Supp.1994).

8. Effective September 1, 1993, the legislature added the following provision to the statute governing child support when an obligor has net resources exceeding $6,000.00:

 The proper calculation of a child support order that exceeds the presumptive amount established for the first $6,000 of the obligor's net resources requires that the entire amount of the presumptive award be subtracted from the proven total needs of the child. After the presumptive award is subtracted, the court shall allocate between the parties the responsibility to meet the additional needs of the child according to the circumstances of the parties. However, in no event may the obligor be required to pay more than an amount equal to 100 percent of the proven needs of the child as child support.

TEX.FAM.CODE ANN. § 14.055(c) (Vernon Supp. 1994). The findings of fact and conclusions of law filed in the present case do not include a finding concerning the exact amount of the children's monthly needs.

Havasy testified that Adam needed further family and group therapy. The usual course of treatment involves nine to twelve months of therapy, then the child is evaluated. If the child is progressing acceptably, then there is another round of group therapy two or three years later. One session of group therapy is usually eight to twelve weeks long with meetings once a week and costs $70.00 for each meeting. Along with the group therapy, there are occasional family sessions scheduled on an as-needed basis. Each of these sessions costs $105.00. Havasy estimated that, for a year's worth of group therapy for Adam, possibly two or three family sessions would be required.

Havasy also testified that change is difficult for Adam, especially when the change makes a lot of demands on him, such as going back to school, and that Adam has voiced suicidal thoughts.

Havasy's recommended treatment for Jonathan is similar to Adam's recommended therapy. The expense would also be similar.

Jonathan currently attends a private school, and Havasy recommended that he continue attending the school because it is one of the best schools in the city for dealing with learning problems as severe as Jonathan's. Jonathan also requires speech therapy classes and participates in occupational therapy because of his motor planning difficulties caused by his inability to control his nervous system.

Havasy testified that attention deficit disorder is considered to be a chronic condition. There is no guarantee that group sessions will not be necessary next year, and the children have to be monitored because their problems may reoccur throughout their youth. Jonathan's problems in particular are chronic conditions, and he may need help at various times. Havasy opined that it is more likely that the children will need professional services down the road than it is that the children's problems will dissipate in the future.

The trial court found that the needs of the children include special health care, a special school for Jonathan, speech therapy, occupational therapy, psychotherapy, special summer camp, special child care needs, and special and extraordinary educational needs.

Nancy Pecht bought a new home in April 1991 and has monthly house payments of $2,547.00. In March 1990, the children and their mother had been living in a rental house with a monthly payment of $575.00. Gerard Pecht asserts that the house represents a lifestyle choice, not a need of the children, and that there is suitable housing in the same neighborhood for less than $2,500.00 a month.

Nancy Pecht testified that the house is an absolute necessity for the children. The house is located on a bus route for Jonathan's private school and allows Adam to go to a better elementary school. There are more children in the new neighborhood, which could be helpful in treating Adam's problem of interacting with children his own age, as well as Jonathan's problems with interpersonal relationships. Adam has matured in a lot of respects, and his mother attributes that to the fact that the location of the house allows Adam to walk to his elementary school.

Nancy Pecht pays a total of $1,020.00 a month for her full-time housekeeper. She explained that she needs dependable help to watch the children after school and on holidays, and the children need the consistency of having one caretaker.

There are other miscellaneous expenses that have increased as well. Nancy Pecht testified that she does more things with her children on the weekend and that, as the boys get older, their interests have expanded and these interests are more expensive, *e.g.,* the boys play soccer and are in the Boy Scouts. *See Hoffman v. Hoffman,* 805 · S.W.2d 848, 851 (Tex.App.—Corpus Christi 1991, writ denied).

The private school that Jonathan attends no longer requires the students to wear uniforms, so Jonathan's clothing costs have increased. Jonathan may also need tutoring. Each of the boys attended special summer camps in 1992, which they apparently did not do in 1990. Camp fees and tutoring cost a total of $1,240.00 annually.

The trial court also found that the parties had conflicts concerning what each party was supposed to pay under the court's previous support orders and conflicts concerning the needs of the children. The trial court determined that a flat monthly payment of $3,500.00 would be the appropriate solution to these disagreements. Under the circumstances, we cannot say that the trial court abused its discretion in its order modifying the amount of child support.

## ATTORNEY'S FEES

Gerard Pecht contends that the trial court abused its discretion in awarding attorney's fees for post-trial services and appellate attorney's fees because there was no pleading and no evidence at trial to support the award of these fees.[9]

Reasonable attorney's fees may be awarded as costs in any suit affecting the parent-child relationship. TEX.FAM.CODE ANN. § 11.18(a) (Vernon 1986). The decision to award attorney's fees is within the discretion of the trial court. *MacCallum v. MacCallum*, 801 S.W.2d 579, 587 (Tex.App.— Corpus Christi 1990, writ denied). In order to be entitled to a discretionary award of attorney's fees, however, the movant must affirmatively plead for them unless the issue is waived or tried by consent. *Id.*

Nancy Pecht included the following plea in her motion to modify the child support orders:

> It was necessary to secure the services of T. WAYNE HARRIS, a licensed attorney, to preserve and protect the children's rights. Respondent should be ordered to pay a reasonable attorney's fee, and a judgment should be rendered in favor of this attorney and against Respondent; or, in the alternative, such reasonable attorney's fees should be taxed as costs and be ordered paid directly to the undersigned attorney.

Nancy Pecht generally requested attorney's fees in her prayer for relief that does not specify whether she seeks these fees for the attorney's services at trial, post-trial events, or appellate work. *Compare id.* (striking award of attorney's fees for the appeal because movant had pleaded only for attorney's fees through "final judgment"). Gerard Pecht asserts that the pleading does not specifically ask for fees in the event of an appeal. If Gerard Pecht believed this pleading and prayer for relief to be too vague, he could have pointed out this flaw by special exception. He did not. Further, the purpose of the pleading is to give notice of the claim involved. TEX.R.CIV.P. 47(a). Nancy Pecht's claim and prayer for attorney's fees may fairly be said to contemplate attorney's fees throughout all stages of the litigation.

Dianne Richards, Nancy Pecht's attorney on appeal, testified at an interim hearing in April 1993 that, based on her experience as a lawyer and her evaluation of the issues in the case, $7,500.00 would be a reasonable and necessary fee for handling an appeal of the case. No other evidence was presented to show the reasonableness of the other amounts awarded for post-trial attorney's fees.[10]

The judgment of the trial court is modified to reduce the amount of attorney's fees, con-

---

9. The trial court's award of attorney's fees for post-trial and appellate services:

If Respondent Requests Findings of Fact and Conclusions of Law .... $ 4,500.00
If Respondent Perfects Appeal to the Court of Appeals .............. 9,000.00
If Respondent Files an Application for Writ of Error ............... 7,500.00
If Respondent Files a Motion for Re-hearing ........................ 5,000.00
TOTAL ............................ $26,000.00

10. The appellee's brief asserts that Harris and Richards "testified to" some of these amounts; however, this is incorrect. When Harris and Richards do mention these sums, they were not giving evidence. Rather, they were arguing the merits of their motion for interim attorney's fees or were asking the court to reform the judgment to include the attorney's fees.

The attorneys did testify *at the hearing on Gerard Pecht's motion for new trial* that the challenged amounts would be a reasonable fee for their legal services. A hearing on a motion for new trial is not a means by which the case may be tried over or tried differently. *Mushinski v. Mushinski*, 621 S.W.2d 669, 671 (Tex.Civ.App.— Waco 1981, no writ); *Sandoval v. Rattikin*, 395 S.W.2d 889, 891–92 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.), *cert. denied*, 385 U.S. 901, 87 S.Ct. 199, 17 L.Ed.2d 132 (1966).

sistent with the evidence, to provide only $7,500.00 as attorney's fees for all post-trial services in connection with the appeal. Otherwise, the judgment is affirmed.