# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-03-00112-CV

**Mark Marion Dolan, Appellant**

**v.**

**Susan Martine, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. 92-07583, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

### M E M O R A D U M   O P I N I O N

This is an appeal from an order increasing Mark Marion Dolan=s child support payments in an enforcement and modification proceeding. The district court ordered monthly child support payments in excess of the maximum amount contained in the standard child support guidelines. *See* Tex. Fam. Code Ann. ' 154.125 (West 2002). Dolan appeals essentially arguing that there is no evidence of the children=s Aactual needs@ as required by Texas Family Code section 154.126(a) in order to justify child support in excess of the guidelines.[1] *Id.* ' 154.126 (West 2002). Because we conclude that sufficient evidence exists to authorize the child support payments ordered, we affirm the district court=s order.

---

[1] Dolan urges confusing and overlapping issues on appeal. *See* Tex. R. App. P. 38.1(e) (identify appellate issues in concise statements). His first issue complains of his ex-wife=s failure to introduce documents corroborating the children=s needs. In the same issue, he then complains that the trial court abused its discretion in setting monthly child support Awhere Martine failed to introduce substantive and probative evidence of the children=s proven needs.@ In his second issue, Dolan challenges findings of fact 7,

**FACTUAL BACKGROUND**

Dolan and his former wife, Susan Dolan Martine, were divorced on June 25, 1993. Three children were born to their marriage, two sons and a daughter who at the time of this modification were 16, 12 and 10 years old, respectively. At the time of the divorce, Dolan was a highly compensated executive with Dell Computer Corporation. The initial divorce decree provides for two forms of child support: (1) a fixed monthly amount of $1,500.00, and (2) an additional thirty percent of any bonus received by Dolan from his employer. A Abonus@ was defined in the decree as any amounts received by Dolan from his employer in addition to his salary.

After the divorce, Susan and the children moved in with her parents in Schaumburg, Illinois; she became a school teacher and eventually married Tom Martine. Dolan moved to Plano and went to work for Lennox Industries as director of finance shortly after the 1993 divorce. He remarried and has an infant son. In March 1999, he began working for Service Experts, Inc., a subsidiary of Lennox International, where he is now vice-president and director of operations.

---

9, 13, and 14, which set out the current and retroactive support, quantifies the children=s needs at $6,500 a month, and finds Dolan=s contribution to be $4,000 a month. Dolan then attacks the legal and factual sufficiency of the evidence to support the court=s award of above-the-line child support. We will liberally interpret Dolan=s complaints as challenges to the legal and factual sufficiency of the evidence to support the court=s award of above-the-line child support.

In 1999, Dolan=s annual income totaled $232,000; in 2000, he earned $236,000; and in 2001, his total earnings were $200,000. In 2002, when this case was tried, Dolan earned an annual salary of $200,000, or $16,667 a month. He already had received additional bonuses in 2002 totaling $70,000. Averaging his last four years of income, including bonuses and stock options, Dolan made approximately $236,000 a year, or $19,740 per month.

The parties agreed that the portion of the divorce decree awarding child support as calculated by a percentage of Dolan=s bonuses was unworkable. Martine initiated this litigation as an enforcement action against Dolan complaining that he underpaid the amount of child support required by the bonus provision of the decree. She claimed that Dolan had underpaid under the bonus provision by approximately $77,000 over the intervening years. In addition to recovering the amount underpaid, Martine also sought to modify the child support order to establish a fixed monthly sum. As Martine sought to increase the fixed monthly child support payments, Dolan conversely moved to modify the monthly child support downward. He sought an order requiring him to pay only the maximum amount contained in the child support guidelines, $1,642.80, without any additional amount calculated on his bonuses.

During trial, the parties reached an agreement regarding the bonus underpayment which the court approved. Under the settlement agreement, Martine was granted a judgment against Dolan for $55,000, to be paid in six varying installments by December 31, 2003. The issue of prospective child support payments proceeded to trial before the court.

Thereafter, the trial court ordered Dolan to pay $4,000.00 per month as child support. The court also made the increased support retroactive to the time Dolan made an appearance in the suit which

3

amounted to an additional $18,000. Dolan was to pay the retroactive support at the rate of $1,000 a month for eighteen months. In the end, Dolan was ordered to pay retroactive and current support totaling $5,000 a month for eighteen months, at which time the monthly payments would drop to $4,000. However, the last retroactive child support payment coincided with the oldest son=s eighteenth birthday, which triggered a decrease in the child support payments to $3,200 for the remaining two children. The payments were to decrease again when the second child reaches majority.

## DISCUSSION

*Child Support in Excess of Guidelines*

This case requires us to determine whether there is probative evidence to support the district court=s assessment of these children=s needs. Because Dolan agrees that he should pay at least the guideline maximum, we are only concerned with section 154.126 of the family code, dealing with child support in excess of the guideline maximum. Section 154.126 provides that:

(a) If the obligor=s net resources exceed $6,000 per month, the court shall presumptively apply the percentage guidelines to the first $6,000 of the obligor=s net resources. Without further reference to the percentage recommended by the guidelines, the court shall order additional amounts of child support appropriate, depending on the income of the parties and the proven needs of the child.

(b) The proper calculation of a child support order that exceeds the presumptive amount established for the first $6,000 of the obligor=s net resources requires that the entire amount of the presumptive award be subtracted from the proven total needs of the child. After the presumptive award is subtracted, the court shall allocate between the parties the responsibility to meet the additional needs of the child according to the circumstances of the parties. However, in no event may the obligor be required to pay more child support than the greater of the presumptive amount or the amount equal to 100 percent of the proven needs of the child.

4

Tex. Fam. Code Ann. ' 154.126.

Dolan argues that a trial court=s discretion in setting the amount of child support beyond the guidelines under section 154.126 is narrower than in setting amounts within the guidelines. *Compare id. with* ' 154.125(a), (b). He stresses that section 154.126 limits a trial court to considering only the proven needs of the child, and he argues that the proof in this case does not support any amount in excess of the guidelines.

The Family Code does not define Aneeds of the child,@but in *Rodriguez v. Rodriguez*, the supreme court explained that:

> Texas law has always held that Aneeds@ is not limited to bare necessities of life. *See*, *e.g.*, *Courville v. Courville*, 568 S.W.2d 719, 720 (Tex. Civ. App.CBeaumont 1978, no writ). We therefore conclude that Aneeds of the child@ includes more than the bare necessities of life, but is not determined by the parents=ability to pay or the lifestyle of the family. In determining the needs of the child, we direct courts to continue to follow the paramount principle: A*the best interests of the child*.@

860 S.W.2d 414, 418 n.3 (Tex. 1993) (emphasis in original). In short, the best interest of the child is still the primary consideration in determining a child=s needs both within and beyond the guidelines. *See Pecht. v. Pecht*, 874 S.W.2d 797, 801 (Tex. App.CTexarkana 1994, no writ).

Although a child=s Aneeds@do not include extravagances, trial courts have broad discretion in deciding what constitutes an extravagance in each particular case. *See In re Grossnickle*, 115 S.W.3d 238, 248 (Tex. App.CTexarkana 2003, no pet). Trial courts are accorded broad discretion in determining

whether a movant has met the burden of proving the needs of the child. *McCain v. McCain*, 980 S.W.2d 800, 802 (Tex. App.CFort Worth 1998, no pet.).

### *Standard of Review*

Child support orders are reviewed for abuse of discretion, and they will not be disturbed on appeal unless there is a clear abuse of discretion. *See In re Gonzalez*, 993 S.W.3d 147, 155 (Tex. App.CSan Antonio 1999, no pet.); *Pecht*, 874 S.W.2d at 800. The test for an abuse of discretion is whether the trial court acted without reference to any guiding legal principles, in other words, that it acted arbitrarily or unreasonably. *Id.* Under an abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant considerations in evaluating whether there was an abuse of discretion. *Id.* In making that determination, we view the evidence in the light most favorable to the trial court=s decision and indulge every legal presumption in favor of the decision. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex. App.CSan Antonio 1995, writ denied). If there is some probative, substantive evidence to support the trial court=s decision, there was no abuse of discretion. *Id.*

In cases involving child support in excess of the guidelines, section 154.126 defines the trial court=s discretion. Any such award must be calculated according to the formula set forth in that provision. If a trial court calculates the child support according to section 154.126, and the amount ordered is less than 100 percent of the child=s proven needs, it is unlikely that the trial court abused its discretion. *See Gonzalez*, 993 S.W.3d at 160; *accord Scott v. Younts*, 926 S.W.2d 415, 422 (Tex. App.CCorpus Christi 1996, writ denied).

6

*Evidence of These Children=s Unmet Needs*

The entire body of evidence concerning the children=s needs was presented by Martine. She testified that in preparing her testimony she went through her check register and calculated everything spent on the children in the last year and divided it by twelve; she said she spent about eight hours preparing her budget.  On cross-examination, Dolan asked if Martine had receipts to support her claim of the expenses contained in her monthly budget.  She said that she did have receipts, but that she inadvertently left them in her car.  She asked Dolan=s attorney if he wanted her to go out to her car and get her receipts.  Her question was not answered.

Martine is a full-time schoolteacher, teaching special education in grades 3 and 4, and earning $4,000 per month.  Her current husband, Tom, is employed full-time as a salesperson for a computer company.  In calculating their monthly expenses, Martine deducted fifteen percent from the family=s common expenses to account for that part of the expenses which she calculated were attributable to Tom.

The monthly budget Martine compiled from actual expenses the children incurred in the preceding year was introduced into evidence.  She testified regarding every element listed.  It included such expenses as $1,245 for house rent; $800 for food for her and the children; $200 for the children=s meals away from home; and $315 for clothes and shoes for the children.  She testified their clothing expenses typically increase at the start of each school year and at Christmas, because those are the two times a year that the children get new shoes.

As for the individual needs of each of her children, she testified that her eldest son, J.D., had attention deficit disorder for which he takes prescription medication. She said that continuous, on-going counseling was recommended, but that she had been unable to afford it. At difficult times, like when J.D. had problems in school or difficulty adjusting to things, she hired a counselor, but she could not afford ongoing counseling for him. She said that J.D.=s school lunches cost $180 a month. He has additional monthly expenses such as a car, a 1995 Buick Skylark, and its attendant costs which amount to $553 monthly. Martine had recently paid $263 for J.D.=s high school class ring.

Martine testified that her other son, C.D., needed tutoring with his school work, but that she had not been able to provide it. She calculated that tutoring would cost approximately $90 monthly. She said that C.D. had not passed the Illinois State Minimum Requirements Test in written language, which was a problem area for him. She said he scores high in math, science and social studies, but has problems in written language. She felt that tutoring would be very helpful to him. Also, C.D. was undergoing treatment for a growth plate injury he had four years ago. He goes twice a week to physical therapy which costs $130 a session, of which insurance pays only $15. He also hurt his ankle the previous fall for which he is seeing an orthopedic surgeon and going to physical therapy. Martine further testified that C.D. needs orthodontia care and glasses, both of which she has been unable to afford. C.D. also takes prescription medication for allergies. She recently had to pay $119 for C.D.=s scientific calculator.

As for the youngest child, Jy.D., Martine testified that she has self-esteem problems and lacks confidence academically. Martine said that Jy.D. does not believe that she is a good student. Martine said she felt that tutoring would give Jy.D. a boost to her confidence that she is lacking. Tutoring for Jy.D.

8

was calculated at $90 monthly. She said that Jy.D. has always wanted to take gymnastics classes, but Martine has been unable to afford it. Jy.D. does take flute lessons and participates in choir. Finally, Martine also testified that it is necessary for Jy.D. to go to after-school care, and that she has monthly child care expenses as well.

Martine calculated that these other recurrent expenses for the children totaled approximately $2,483.80, including such things as: high school dances; sports equipment; Girl Scout activities, birthday parties (each child is invited to at least one party a month), Christmas gifts, school and sports photographs, books, magazines, pet expenses, as well as church activities and retreats. Martine testified that they have a $491 balance currently at the dentist for the children=s summer teeth cleanings which had not been paid by the insurance. She testified that her calculations showed that the total monthly monetary needs of the children are $7,200. She said there is currently a $5,153 deficit in their monthly child support budget, which was either made up for by Tom Martine or was not provided at all. She recommended that the children receive a fixed amount of $4,500.00 per month. Martine testified that the budget she prepared was an accurate reflection of the children=s needs.

As for Dolan=s monthly expenses, he testified his currently monthly budget is $13,447. He testified to the following monthly expenses: $200 for health insurance on children; $2,020 for housing; $817 for real estate taxes; $1000 for groceries and household items; $500 for meals away from home; $1,500 for a nanny for his infant son; $784 for a car payment; $400 for laundry and dry cleaning; $3,800 for payments on debts; $239 for a forty-two and a half foot boat; and $528 for a lot and mobile home at Lake Texoma. His expenses were not discounted to account for amounts attributable to his current wife. On cross-

9

examination, Dolan was asked about his annual income, which is in excess of $200,000, and he said,

A200,000 sounds like a lot, but after paying in excess of 40 percent tax rate, at the end of the day, I don=t

end up with that much, so it=s a perception issue, sir.@

Dolan testified that he believes he should only pay $1,648 of monthly child support

according to the Texas guidelines.  He said, AI am simply requesting that I have child support ordered at the

statutory guideline . . . [,] my attorney has advised me that a judge does have some discretion when the

amount does exceed $6,000.@ Dolan was asked whether he believed that $1,648 of monthly child support

was in the children=s best interests, and he answered, AI have no real basis to make that determination.@

In compliance with section 154.130 of the Family Code, the district court included the

following findings in its order:

1.  The monthly net resources of [Dolan] are at least $14,000.00;

2.  The monthly net resources of [Martine] are at least $3,000.00;

3.  The percentage applied to [Dolan=s] net resources for child support by the actual order rendered by the court is 27.38%;

4.  The amount of child support if the percentage guidelines are applied to the first $6,000.00 of [Dolan=s] new resources is $1,642.80;

5.  The specific reasons that the amount of child support ordered by the court, $4,000.00 per month, is greater than the amount shown in the immediately preceding paragraph 4. is that the child support was determined pursuant to Texas Family Code Section 154.126.  The proven needs of the children are at least $6,500.00.  When the presumptive amount of child support required by the guidelines ($1,642.80) is subtracted from the proven needs ($6,500.00) then the resulting unmet needs are $4,857.20.  The portion of this unmet needs allocated to [Dolan] is $2,357.20.  The sum of the presumptive amount of child support ($1,642.80) and the portion of the

unmet needs allocated to [Dolan] ($2,357.20) is $4,000.00. The portion of the unmet needs allocated to [Martine] is $2,500.00.

6.    [Dolan] is obligated to support children in more than one household:

     a.    The number of children before the court is three;

     b.    The number of children not before the court residing in the same household as [Dolan] is one;

     c.    The number of children not before the court for whom [Dolan] is obligated by court order to support . . . , and who are not counted under paragraph a or b is none.

Martine=s testimony supports $7,200 as the monthly needs of the children; the district court found their needs to amount to $6,500. After the guideline=s presumptive amount is deducted ($6,500 - $1,642.80 = $4,857.20), the children=s remaining unmet needs are $4,857.20. The court then apportioned the remaining needs between the parents on approximately an equal basis, with Martine bearing a slightly larger amount (by approximately $142.80) of these monthly needs than Dolan. Martine asked that Dolan be ordered to pay $4,500 in support; the court awarded $4,000. Dolan was ordered to pay, in addition to the presumptive amount, less that fifty percent of the unmet needs of his children.

Trial courts are accorded the sole discretion to judge the credibility of witnesses and may choose to believe or disbelieve a custodial parent. *See Gonzalez*, 993 S.W.3d at 160. Credible evidence of the current expenses of the child exceeding the amount of child support ordered indicates that the trial court did not abuse its discretion. *See Grossnickle*, 115 S.W.3d at 248; *Thomas v. Thomas*, 895 S.W.2d 895, 897-98 (Tex. App.CWaco 1995, writ denied) (upholding increased child support based on

11

introduction of household budget showing children=s expenses for previous year as sufficient evidence of needs).

Dolan complains of Martine=s testimony because she included herself in itemized expenses such as the $800 monthly for food. He points to her admission that the $800 figure also included food that she consumed. However, considering that Dolan testified that he and his infant son=s grocery expenses totaled $1,000, the district court was within its discretion to believe that $800 was a reasonable monthly sum to feed three children, including two teenage boys. Dolan presented no evidence to contradict Martine=s testimony regarding the needs of their children.

Dolan spends a great deal of his argument complaining that Martine did not introduce written receipts to support her testimony of the children=s needs. He intimates that without written receipts corroborating her testimony, Martine=s testimony amounts to no evidence at all. We disagree. Courts often consider the custodial parent to be in the best position to explain the needs of the child. *See Gonzalez*, 993 S.W.3d at 159-60; *McCain*, 980 S.W.2d at 802; *Scott*, 926 S.W.2d at 421. Considering that Dolan earns an average of over $19,000 a month and that the court must consider the best interests of these children, we hold that there was sufficient evidence to support the district court=s order and no abuse of discretion was shown.

## CONCLUSION

Having overruled all of Dolan=s complaints, the judgment of the district court is affirmed.

12

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   February 20, 2004