

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-13-00154-CV

IN THE INTEREST OF K.R.A., A
CHILD

----------

## FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

On the court's own motion, we withdraw our prior opinion and judgment issued March 6, 2014, and replace it with the following.

In three issues in this suit affecting the parent-child relationship (SAPCR), pro se appellant B.M.A.[2] appeals the trial court's order denying his motion for

---

[1]*See* Tex. R. App. P. 47.4.

new trial and reconsideration of its January 24, 2013 order. In his motion and in this appeal, B.M.A. complains of the denial of his plea to the jurisdiction, the grant of appellee R.S.'s motion to modify child support, and the trial court's orders finding him in contempt for failure to pay child support. We dismiss for want of jurisdiction B.M.A.'s attempt to appeal the trial court's contempt rulings and affirm the trial court's order denying B.M.A.'s motion for new trial and reconsideration.

## II. Factual and Procedural Background

K.R.A. was born in June 2006. Around three years later, on May 15, 2009, the 324th District Court of Tarrant County issued a final decree of divorce between B.M.A. and R.S. and appointed them K.R.A.'s joint managing conservators.

The divorce decree did not contain any specific child support obligations but provided that each parent, during his or her periods of possession of the child, had the duty "to support the child, including providing the child with clothing, food, shelter, and medical and dental care not involving an invasive procedure." It also required both parties to pay for K.R.A.'s medical expenses, with the handwritten notation, "provided cost-free medical services are

---

[2]We identify the parties by their initials to protect the child's identity. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2008 & Supp. 2012).

unavailable."  Both parties signed the decree as "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE."[3]

Starting around a month after the entry of the divorce decree, R.S. sought to modify it.[4]  In her first amended and second amended motions, R.S. alleged that material and substantial changes in circumstances had occurred since the divorce decree's rendition, that the support payments previously ordered were "not in substantial compliance with the guidelines in chapter 154 of the Texas Family Code," and that the requested increase in child support would be in K.R.A.'s best interest.  After the trial court denied B.M.A.'s special appearance and plea to the jurisdiction, R.S. requested temporary orders for, among other things, child support, health insurance premiums for the child, and 75% of the child's uninsured medical expenses while the case was pending, all of which the associate trial judge granted.

The associate trial judge's January 6, 2012 temporary orders required B.M.A. to pay $724.50 per month in child support.  On February 3, 2012, a

---

[3]Although B.M.A. has contended and continues to contend on appeal that there was no legal marriage between him and R.S. and that the divorce decree was the wrong procedural vehicle to seek child support, he does not deny that he is K.R.A.'s father, and he agreed in the trial court that he had a child support obligation to K.R.A.  In response to his arguments, the trial court stated that the issue of the marriage was res judicata because there was a divorce decree that B.M.A. had never sought to set aside and that because B.M.A. would still owe child support, the procedural vehicle was irrelevant.

[4]R.S. filed her first amended motion to modify parent-child relationship in September 2011, and she filed her second amended motion in December 2011.

3

withholding order was entered to instruct B.M.A.'s employer, the Attorney General of Guam, to withhold child support payments from B.M.A.'s disposable earnings. Twenty days later, the trial court changed the amount B.M.A. was obligated to pay to $766.50 each month—$716.50 in child support and $50 for the child's health insurance reimbursement—to start January 1, 2012, and due on the first day of each subsequent month, and it entered a new withholding order. In June 2012, R.S. filed a motion to enforce the child support order, alleging that B.M.A. had failed to pay the monthly payments, with a total arrearage of $3,543.69.

After a hearing on R.S.'s motion to enforce, the trial court found that B.M.A. had failed to pay the full amount of child support for six months, making him $2,792.55 in arrears plus interest, and found that attorney's fees and costs should be assessed against him. The trial court held B.M.A. in contempt but suspended the order of commitment on the condition that B.M.A. make his payments. The trial court ordered that child support and the arrearages be paid through withholding from B.M.A.'s earnings and that attorney's fees and court costs be paid directly to R.S.'s attorney.

In its January 24, 2013 order, the trial court denied B.M.A.'s motion to stay and reform the enforcement order and entered a final order assessing child support in the amount of $796.50 per month, finding an arrearage in the amount of $3,942.30 from January 1, 2012 to October 22, 2012. It also found that R.S. had incurred $10,000 in attorney's fees, expenses, and costs and ordered B.M.A.

4

to pay this amount plus interest to R.S.'s attorney.  As it had done throughout the case with B.M.A.'s earlier motions for new trial, the trial court denied B.M.A.'s final motion for new trial and reconsideration, and this appeal followed.

### III.  Contempt

In his third issue, B.M.A. attempts to appeal the trial court's contempt order.  However, a contempt judgment is reviewable only via a petition for writ of habeas corpus if the contemnor is confined, or via a petition for writ of mandamus if no confinement is involved.  *See Palmer v. Palmer*, No. 02-11-00098-CV, 2012 WL 1130417, at *2 (Tex. App.—Fort Worth Apr. 5, 2012, no pet.) (mem. op.) (citing *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied) (op. on reh'g)).  Decisions in contempt proceedings cannot be reviewed on direct appeal because contempt orders are not appealable, even when appealed along with a judgment that is appealable.  *Id.*; *see also In re Office of Att'y Gen. of Tex.*, 215 S.W.3d 913, 915–16 (Tex. App.—Fort Worth 2007, orig. proceeding) (explaining why contempt judgments are not appealable and must be attacked by petition for writ of habeas corpus or for writ of mandamus).  Because we cannot reach B.M.A.'s contempt-based complaints in this direct appeal, we dismiss his third issue for want of jurisdiction.

### IV.  Plea to the Jurisdiction

In his first issue, B.M.A. argues that the trial court erred by denying his plea to the jurisdiction because it had originally lacked jurisdiction to issue the divorce decree and therefore could not establish jurisdiction over R.S.'s motion to

modify child support.[5]  Because B.M.A. argues that the trial court lacked jurisdiction to enter the divorce decree, his plea to the jurisdiction is a collateral attack on that decree.  *See Narvaez v. Maldonado*, 127 S.W.3d 313, 317 (Tex. App.—Austin 2004, no pet.).

In a collateral attack on a judgment, the recitations of the judgment control the rest of the record, and extrinsic evidence cannot be used to establish a lack of jurisdiction.  *Id.* (holding that when divorce decree was regular on its face and recited that the trial court had jurisdiction, appellant's exclusive remedy for challenging decree was through bill of review).  Jurisdictional recitations in a judgment that is regular on its face import absolute verity and can be attacked only directly, not collaterally.  *Baqdounes v. Baqdounes*, No. 01-07-01102-CV, 2009 WL 214508, at *3 (Tex. App.—Houston [1st Dist.] Jan. 29, 2009, pet. denied) (mem. op.) (citing *Akers v. Simpson*, 445 S.W.2d 957, 959 (Tex. 1969)); *see also Hardin v. Hardin*, 597 S.W.2d 347, 350 (Tex. 1980) ("It is well established in Texas that a divorce judgment, unappealed, and regular on its face, is not subject to a collateral attack in a subsequent suit."); *Shackelford v. Barton*, 156 S.W.3d 604, 606 (Tex. App.—Tyler 2004, pet. denied) (holding that divorce decree could not be collaterally attacked when it was regular on its face and its jurisdictional recitation was sufficient to establish jurisdictional basis for valid judgment).

---

[5]B.M.A. contends that R.S. committed jurisdictional fraud by falsely alleging that the parties were legally married in her divorce petition.

Here, the final divorce decree, which both parties signed as approved and consented to "AS TO BOTH FORM AND SUBSTANCE," contains the following language regarding jurisdiction:

> The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, *finds that it has jurisdiction of this case and of all the parties* and that at least sixty days have elapsed since the date the suit was filed. The Court finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited. [Emphasis added.]

Substantially similar language has been found sufficient to establish the jurisdictional basis for a valid judgment. *See Baqdounes*, 2009 WL 214508, at *3 (concluding on same language that divorce decree was not void and could not be collaterally attacked); *Toles v. Toles*, 113 S.W.3d 899, 914–15 (Tex. App.—Dallas 2003, no pet.) (same); *see also Cook v. Cook*, 233 S.W.2d 163, 164 (Tex. Civ. App.—Fort Worth 1950, writ ref'd) (stating that divorce judgment was not subject to collateral attack when "[i]t appear[ed] from recitals set out in the divorce judgment that service was complete [and] that the court had jurisdiction of both parties and the subject matter").

As set out above, the recitations in the divorce decree support the trial court's jurisdictional ruling. *See Baqdounes*, 2009 WL 214508, at *3; *Toles*, 113 S.W.3d at 914–15; *Cook*, 233 S.W.2d at 164. And because the trial court had jurisdiction to enter the divorce decree, it had jurisdiction to modify it. *See* Tex. Fam. Code Ann. §§ 155.001(a)–.004(a) (West 2008); *see also id.* § 154.305(c)

7

(West 2008) (providing action to modify child support may be filed under family code chapter 156 if there is a court of continuing, exclusive jurisdiction). Therefore, the trial court did not err by denying B.M.A.'s plea to the jurisdiction.[6] We overrule B.M.A.'s first issue.

## V. Modification of Child Support

In his second issue, B.M.A. challenges the existence of an adverse change in R.S.'s or K.R.A.'s circumstances to warrant the child support modification. He contends that the change at issue was for "lifestyle" reasons and therefore cannot be sufficiently material or substantial to warrant an increase in his amount of child support.

## A. Standard of Review and Applicable Law

A trial court's child support order will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Marquez v. Moncada*, 388 S.W.3d 736, 739 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the

---

[6]Further, although B.M.A. argues that R.S. waived her ability to seek modification of the child support agreement by not filing a motion for new trial after the entry of the divorce decree, a court with continuing exclusive jurisdiction "may modify an order that provides for the conservatorship, support, or possession of and access to a child." Tex. Fam. Code Ann. § 156.001 (West 2008). And although B.M.A. also relies on family code chapter 233 to support his waiver argument, this chapter is inapposite to the issue before us. *See id.* § 233.001(a) (West 2008) (stating that purpose of chapter 233 procedure is to enable the *Title IV-D agency* to take expedited administrative actions to establish, modify, and enforce child support obligations).

act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. An abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g). We review the evidence in the light most favorable to the child support order and indulge every presumption in favor of the trial court's ruling. *In re V.L.K.*, No. 02-10-00315-CV, 2011 WL 3211245, at *2 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.).

When the parties agree to an order under which the amount of child support differs from the amount that would be awarded in accordance with the child support guidelines, the court may modify the order only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition. Tex. Fam. Code Ann. § 156.401 (a-1) (West 2008 & Supp. 2013); *V.L.K.*, 2011 WL 3211245, at *3 ("A trial court's determination as to whether there has been a material and substantial change of circumstances is not guided by rigid rules and is fact specific."). "An increase in the needs, standard of living, or lifestyle of the obligee since the rendition of the

9

existing order does not warrant an increase in the obligor's child support obligation," Tex. Fam. Code Ann. § 156.405 (West 2008), but in determining whether there has been a material and substantial change in circumstances, the trial court must examine and compare the circumstances of the parents and any minor children at the time of the initial order with the circumstances existing at the time the modification is sought. *V.L.K.*, 2011 WL 3211245, at *3.

The trial court may also consider the child support guidelines under chapter 154 to determine whether there has been a material or substantial change of circumstances warranting a modification of an existing child support order. *Id.*; *see also* Tex. Fam. Code Ann. § 156.402(a) (West 2008). If the amount of support contained in the order does not substantially conform with the guidelines under chapter 154, the court may modify the order to substantially conform with the guidelines if the modification is in the best interest of the child, and it may consider other relevant evidence in addition to the factors listed in the guidelines. Tex. Fam. Code Ann. § 156.402(b); *see also id.* § 154.122 (West 2008); *V.L.K.*, 2011 WL 3211245, at *3 ("It is presumed a child support payment established by the guidelines is in the best interest of the child.").

At the time this case was heard, the child support guidelines provided that payment for one child was 20% of the obligor's net resources based on his monthly net resources of not greater than $7,500.[7]  *See* Tex. Fam. Code Ann.

---

[7]*See* 38 Tex. Reg. 4647 (July 19, 2013), *available at* http://www.sos.state.t x.us/texreg/pdf/backview/0823/0823ia.pdf (stating that effective September 1,

§ 154.125(a), (b) (West 2008 & Supp. 2013), § 154.128(a) (West 2008) (setting out formula to compute support for children in more than one household). In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors, including the child's age and needs; the parents' ability to contribute to the child's support; any financial resources available to support the child; the amount of time of possession of and access to the child; the amount of the obligee's net resources; child care expenses incurred by either party in order to maintain gainful employment; whether either party has managing conservatorship or actual physical custody of another child; the amount of other deductions from wage or salary income; provision of health insurance and payment of uninsured medical expenses; the cost of travel to exercise possession of and access to the child; debts or debt service assumed by either party; and "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents." *Id.* § 154.123 (West 2008).

## B. Evidence

The original divorce decree, entered on May 15, 2009, named both parties as joint managing conservators. It provided that each parent had the duty to support the child and pay for her medical expenses during his or her periods of possession of the child. With regard to B.M.A., there is a handwritten notation

---

2013, the Office of the Attorney General of Texas promulgated new tax charts for calculating the adjusted amount under section 154.125(a-1)).

adding, "funds permitting on a voluntary basis" and with regard to the payment of medical expenses, there is another handwritten notation indicating "provided cost-free medical services are unavailable."

Under the decree, B.M.A. could designate up to thirty days of visitation with K.R.A. each calendar year, subject to the child's school schedule and Christmas holidays, and the decree provided that he would pay any and all travel expenses for the child incurred to exercise visitation. R.S. testified that since the entry of the divorce decree, B.M.A. had not exercised any visitation or provided any birthday gifts for the child and that she had been the exclusive party taking care of the child's expenses other than the monthly $130 social security benefits B.M.A. provided for the child.

At the February 6, 2012 hearing, R.S. testified that when the divorce decree was entered, she did not have a green card, driver's license, vehicle, or job but that she had subsequently obtained all four. She also stated that at the time of the divorce, she had lived with her sister and brother-in-law and their child. These relatives had assisted her financially and with transportation; since the divorce, she had left their residence and had a corresponding increase in expenses and needed a vehicle. R.S. also testified that K.R.A. was in kindergarten, which required school uniforms, and that because R.S. had a job, K.R.A. required additional after-school daycare, which R.S. could not afford. R.S. stated that she earned $22,000 per year and had no other sources of income.

12

During cross-examination, R.S. said that after three years of living with her relatives and paying them $500 per month and nothing for utilities, she and K.R.A. moved into an apartment that cost $545 per month in addition to separate costs for utilities. She agreed that she had previously testified before the associate judge that she had moved out to have a more independent lifestyle.

K.R.A. was in the first grade at the time of the October 22, 2012 hearing on R.S.'s second amended motion to modify and motion for enforcement of child support. R.S. testified that there were now additional expenses associated with K.R.A.'s education, including extracurricular activities such as swimming, karate, and Mandarin Chinese classes.[8] R.S. also testified that B.M.A. had failed to pay child support in January 2012, February 2012, and March 2012. R.S. agreed on cross-examination that she had not been forced to move out of her relatives' house and that she had had no transportation problems when she lived with her sister.

The trial court admitted B.M.A.'s 2010 tax return and his 2011 year-to-date income. The 2010 tax return showed that B.M.A.'s adjusted gross income was $76,661. B.M.A. supported two other minor children. As of October 28, 2011, B.M.A. was making $3,047.60 per month as his adjusted gross pay and received $687 in monthly social security benefits, $130 of which were paid to K.R.A.

---

[8]R.S.'s $2,907.33 monthly expenses, which were admitted as Plaintiff's Exhibit 2, listed the expenses attributable to K.R.A. as $655, for K.R.A.'s birthday, extracurricular activities, entertainment, clothing, daycare, school lunches, and hobbies.

13

In R.S.'s second amended motion to modify, in addition to alleging that a material and substantial change in circumstances had occurred, R.S. also stated that "[t]he support payments previously ordered are not in substantial compliance with the guidelines in chapter 154 of the Texas Family Code, and the requested increase would be in the best interest of the child"; that B.M.A. did not exercise visitation with K.R.A., contributing to the additional cost of raising the child because she was supporting the child's actual needs; and that she could not afford to maintain the child's monthly health insurance policy. In its January 24, 2013 order, the trial court found "that the material allegations in the petition to modify are true and that the requested modification is in the best interest of the child." *See id.* § 156.401(a)(2).

## C. Analysis

The record reflects that when the divorce decree was entered, K.R.A. was around three years old; by the time of the October 2012 hearing, she was in first grade. It also reflects that except for $130 per month in social security benefits from B.M.A., R.S. was K.R.A.'s sole support. *See Brejon v. Johnson*, 314 S.W.3d 26, 31–32 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that there was probative and substantive evidence sufficient to support trial court's order increasing child support when, among other things, father's unused visitation required mother to spend extra, unforeseen sums on childcare). Since the entry of the divorce decree, R.S. had obtained a green card, a driver's license, a vehicle, and a job, in addition to moving from her relatives' house, and

14

K.R.A.'s extracurricular activities and daycare were additional expenses that R.S. could not afford on her $22,000 annual income. *See In re J.A.R.*, No. 12-11-00025-CV, 2011 WL 3768381, at *4 (Tex. App.—Tyler Aug. 24, 2011, no pet.) (mem. op.) (holding no abuse of discretion in determining material and substantial change in circumstances had occurred when mother testified about additional expenses attributable to children's increasing involvement in extracurricular activities); *In re Pecht*, 874 S.W.2d 797, 802 (Tex. App.—Texarkana 1994, no writ) (upholding child support modification when, among other things, mother testified that as children grew older, their interests expanded and had become more expensive). In addition to R.S.'s testimony about the increased costs associated with an older child, the record reflects that as of October 28, 2011, B.M.A. had a substantially greater income than R.S. despite his caring for two other minor children.

While moving into a more expensive residence does not qualify as a material or substantial change in circumstances, *see In re J.A.H.*, 311 S.W.3d 536, 542 (Tex. App.—El Paso 2009, no pet.), the child's age and needs—which are not limited to the bare necessities of life—and the difference in the parents' net resources and ability to contribute support for the child, in addition to R.S.'s childcare expenses necessary for her to maintain gainful employment, support the trial court's decision to modify the amount of K.R.A.'s monthly child support due from B.M.A. *See* Tex. Fam. Code Ann. § 154.123; *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993) (stating that "'needs of the child' includes

15

more than the bare necessities of life, but is not determined by the parents' ability to pay or the lifestyle of the family," and directing courts, in determining child's needs, "to continue to follow the paramount guiding principle: *the best interest of the child.*"). Further, the increase in child support for K.R.A. ordered by the trial court is more in line with the child support guidelines than his previous $130 voluntary payment.[9] Therefore, based on the record before us, we conclude that the trial court had sufficient evidence of substantive and probative character to support its decision. Reviewing that evidence in the light most favorable to the child support order, we conclude that the trial court did not abuse its discretion when it modified the amount of child support. *See Worford*, 801 S.W.2d at 109; *see also Unifund CCR*, 299 S.W.3d at 97; *V.L.K.*, 2011 WL 3211245, at *3. We overrule B.M.A.'s second issue.

## VI. Conclusion

We dismiss B.M.A.'s third issue for want of jurisdiction. Having overruled B.M.A.'s two remaining issues, we affirm the trial court's order denying his motion for new trial and reconsideration of its January 24, 2013 order.

/s/ Bob McCoy

BOB MCCOY
JUSTICE

---

[9]B.M.A. does not challenge the amount of monthly child support calculated by the trial court in this appeal.

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED:  April 3, 2014