**George Rice FARISH, Appellant,**

v.

**Dorothy Elizabeth FARISH, Appellee.**

No. 09–94–067 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Sept. 28, 1995.

Decided May 2, 1996.

---

Pamela George, Houston, for appellant.

John C. Pavlas, Houston, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant George Rice Farish appeals from an order denying his motion to modify child support.

George Farish ("Farish") and Dorothy Farish were divorced on November 9, 1987. The divorce decree contained a provision whereby Farish contractually waived his right to seek a decrease in child support for a period of five (5) years until November 15, 1992; Dorothy Farish likewise waived her right to seek an increase in child support for that same time frame.[1] On February 16, 1993, more than five years after the November 1987 divorce decree, appellant filed a modification motion seeking a decrease in child support for the three minor children under the 1987 order. The trial court concluded that there had been no material and substantial change to warrant a reduction, denied appellant's motion to modify, and awarded attorney's fees to appellee. We affirm the trial court's decision.

Subsequent to his 1987 divorce from Dorothy Farish, George Farish remarried, and a child was born of this marriage. At the time of the hearing on the modification in October 1993, appellant had four children whom he had a duty to support; the last child was born subsequent to the child support order which appellant is seeking to modify herein.

Pursuant to the divorce decree, appellant's child support for the three minor children from his marriage to Dorothy Farish was

---

1. The issue of contractual waiver of the right to seek a decrease or increase in child support is not before this court. However, other courts have dealt with the issue: *Underwood v. Underwood*, 902 S.W.2d 152 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Giangrosso v. Crosley*, 840 S.W.2d 765 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Leonard v. Lane*, 821 S.W.2d 275 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

$4,500 ($1,500 per child) per month. Appellant also was paying an additional $1,250 per month conditional support until such time as the parties' marital residence was sold. The residence was sold in the summer of 1993, and August 1993 was the last month of the conditional support. As a result of the sale of the home, Farish's child support was reduced from $5,750 per month to $4,500 per month, beginning September 1993. Farish was also required to maintain health insurance on the three minor children and to pay 75% of all uninsured medical bills. He was to maintain a life insurance policy on his life, the cost of which, according to his testimony, was $250 per month. Under the provisions of the decree, he was also to pay for reasonable tutoring expenses for the children and private school *increases* from the date of divorce.

In point of error one, Farish argues that the trial court's holding is against the great weight and preponderance of the evidence, was made without reference to the guidelines and evidentiary factors in the Texas Family Code, and constitutes an abuse of discretion. Specifically, he alleges that the trial court erred in finding there was no material and substantial change in circumstances that would warrant a reduction in child support. Because of a decline in his net resources, his remarriage, another child, and private school tuition increases for the three minor children by appellee, appellant contends there was a material and substantial change. Farish's primary argument in support of his claim is the alleged necessity of the sale of most of his assets to pay his debts and child support.

 An existing child support order may be modified if the circumstances of the child or a person affected by the order . . . to be modified have materially and substantially changed since the date of its rendition. . . . TEX.FAM.CODE ANN. § 14.08(c)(2) (Vernon Supp.1994) (repealed 1995) (current version at TEX.FAM.CODE ANN. § 156.401(a) (Vernon 1996)).[2] In order to obtain a decrease in child support obligations, the movant must

prove a material and substantial change after the initial support was rendered. *Woodall v. Woodall,* 837 S.W.2d 856 (Tex.App.—Houston [14th Dist.] 1992, no writ). Therefore, evidence regarding the parents' financial circumstances or the child's financial circumstances and needs at the time of the divorce and the time of the modification hearing should be presented to the trial court such that the trial court can determine whether the circumstances of the child or the parties affected by the decree have materially and substantially changed since the date of the decree. *MacCallum v. MacCallum,* 801 S.W.2d 579 (Tex.App.—Corpus Christi 1990, writ denied). Should the requisite changed circumstances appear, the court may then alter the child support obligation. The "best interest of the child" remains the trial court's primary consideration in determining questions of child support. *Hammond v. Hammond,* 898 S.W.2d 406 (Tex.App.—Fort Worth 1995, no writ); TEX.FAM.CODE ANN. § 14.07 (Vernon Supp.1994) (repealed 1995) (current version at TEX.FAM.CODE ANN. § 153.002) (Vernon 1996).

 A court's child support order will not be disturbed on appeal unless the complaining party shows that the order constituted a clear abuse of the court's discretion. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). The test is whether the court acted arbitrarily or unreasonably, without reference to any guiding rules and principles. *Simon v. York Crane and Rigging Co.,* 739 S.W.2d 793 (Tex.1987). If the court determines a material and substantial change has occurred, the extent of the alteration of the amount of child support also lies within the court's discretion. *In the Matter of the Marriage of Hamer,* 906 S.W.2d 263, 265 (Tex. App.—Amarillo 1995, no writ); *Thomas v. Thomas,* 895 S.W.2d 895, 897 (Tex.App.—Waco 1995, writ denied). When there is some evidence of a substantive and probative character to support the decision, no abuse of discretion occurs. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.—Houston [1st

---

2. The sections of the Family Code cited herein were contained in Title 2 of the Family Code. In 1995, the Texas Legislature recodified the Family Code by repealing Title 2, as that title existed before April 20, 1995, reenacting Title 2, and adding Title 5, effective April 20, 1995. All of the sections cited herein are now in Title 5.

Dist.] 1993, writ denied). Under this particular standard of review, legal and factual sufficiency claims are not independent grounds of error but are incorporated into a determination of whether the trial court abused its discretion. *Thomas,* 895 S.W.2d at 896; *In the Interest of Pecht,* 874 S.W.2d 797, 800 (Tex.App.—Texarkana 1994, no writ).

Evidence was presented at trial that Farish sold most of the assets which he was awarded under the 1987 divorce decree, including certain community stocks and bonds, separate property real estate, and separate property stocks and bonds. According to appellant's Exhibit 3, the monetary results of the sale were as follows:

Total Community Stocks and Bonds......$ 917,291
Total Separate Real Estate .............$ 687,729
Total Separate Stocks and Bonds Sold....$1,512,487
Grand Total of Assets Sold to Meet
 Expenses..........................$3,117,507

Appellant urges that he was required to sell these assets in order to meet his obligations, including child support. As a result, Farish testified, his net worth since 1987 declined by $752,000, making his total net worth as of December 31, 1992, $3,249,663, which included $391,000 of essentially uncollectible receivables. According to Farish:

> I sold all of my liquid assets; all of my marketable securities have been sold. Since the date of the divorce the sum total of that is $3.1 million of assets, liquidated in an effort to support my three children. $3.1 million of assets liquidated. They don't go back up in value. They are gone forever.

It is undisputed that appellant sold the assets in question. It is also undisputed that the overwhelming majority of the funds obtained from the sale of those assets went to the reduction of his debt load, rather than to payment of child support. According to appellant, his net monthly resources (for the first seven months of 1993) were $31,898.24, while his liabilities were $69,224.01, leaving a deficiency of $37,325.77 each month. Farish further testified that "the only way I have been able to do it is to sell assets or borrow funds."

On cross-examination, appellant testified, and his income tax records reflect, that his adjusted gross income over the last five years is as follows:

| Year | Adjusted Gross Income |
|------|----------------------|
| 1987 | $114,121 |
| 1988 | 189,624 |
| 1989 | 736,318 |
| 1990 | 633,092 |
| 1991 | 279,072 |

In breaking those figures down, appellee looked to the amounts Farish received from dividends, salary, and interest, which are defined in Texas Family Code § 14.053(b) as net resources available for child support.

| Year | Dividends | Wages | Interest | Total |
|------|-----------|-------|----------|-------|
| 1987 | $50,637 | $38,500 | $ 16,607 | $105,744 |
| 1988 | 76,737 | 63,966 | 14,142 | 154,845 |
| 1989 | 50,460 | 84,636 | 47,764 | 182,860 |
| 1990 | 28,200 | 88,142 | 80,225 | 196,567 |
| 1991 | 17,264 | 97,760 | 82,090 | 197,114 |
| 1992 | | | 120,314 | |
| 1993 | | | 110,000 | (for first seven months of 1993) |

As of the date of the modification hearing, appellant had not filed his 1992 income tax return; therefore, we look to his testimony in the record for 1992 figures. The 1993 figure, noted above, is for the first seven months of 1993 only.

The adjusted gross income figures include capital gains from the sale of assets, in addition to dividends, wages, and interest income. In 1989, for example, appellant had approximately $736,000 of adjusted gross income. Of that figure, $528,894 was attributable to capital gains from sale of assets. According to Farish's 1989 income tax return, which was admitted into evidence along with the 1987, 1988, 1990, and 1991 returns, $182,860 of the $736,318 adjusted gross income was attributable to wages, dividends, and interest, up from $154,845 in 1988 and $105,744 in 1987. In 1990, capital gains were $391,954, and in 1991, $174,703. In 1992 appellant testified that he had separate property income of $417,446, which also included gain on sale of assets. Total dollars received from whatever source in 1992 was $619,000. Of the $619,000, the directors' fees, dividends, interest, oil and gas income, rent, salary, trust distribution, and working interest income came to $274,000. In 1993, Farish's income for the first seven months was $225,287 or approximately $32,000 per month. After income tax, Farish estimated his income in 1993 to be $18,456 per month. As

demonstrated by the record, appellant's income increased each year from 1987 to 1993.

It is appellant's contention that any sums received in the years since the divorce from sale of assets should not be counted as part of the net resources available to appellant for child support. According to appellant, proceeds from sale of assets do not constitute net resources, since they represent return of principal or capital. In support of his position, appellant cites TEX.FAM.CODE ANN. § 14.053(b) (Vernon Supp.1994) [3]:

> (b) Net Resources Defined. "Net resources," for the purpose of determining child support liability, are 100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses), interest, dividends, royalty income, self-employment income (as described in Subsection (c) of this section), net rental income (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation), and all other income actually being received, including but not limited to severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits, unemployment benefits, disability and workers' compensation benefits, interest income from notes but not including return of principal or capital, accounts receivable regardless of the source, gifts and prizes, spousal maintenance, and alimony, less (subtracting) 100 percent of social security taxes, federal income tax withholding for a single person claiming one personal exemption and the standard deduction, union dues, and expenses for health insurance coverage for the obligor's child. Benefits paid pursuant to aid for families with dependent children and any other child support received from any source shall be disregarded in calculating net resources.

TEX.FAM.CODE ANN. § 14.053(b) (Vernon Supp.1994) (repealed 1995) (current version

at TEX.FAM.CODE ANN. § 154.062) (Vernon 1996).

Appellant does not specifically define what he means by "return of capital," but we infer from his argument that "return of capital" means the proceeds from the sale of assets or, at the very least, capital gains on the sale of assets. Under his argument, those proceeds are not to be considered as "net resources." He relies on the language in § 14.053(b), which excludes "return of principal or capital" from net resources.[4] Appellant has, however, taken the phrase out of context. Rather than referring to proceeds from the sale of assets or to capital gains on the sale of those assets, the phrase refers to the return of principal or capital on a note, which is not a net resource for child support purposes.

■ The Texas Family Code does not exclude capital gains from the definition of "net resources." Indeed, capital gains are specifically included in TEX.FAM.CODE ANN. § 14.053(b). Moreover, the Code provides in § 14.053(e) that the court may consider any additional factors that increase or decrease the ability of the obligor to make child support payments.

> The court may also assign a reasonable amount of "income" to income-producing assets that have been voluntarily transferred or reduced in earnings with the effect of reducing the net resources of the party. As used in this section, "property" and "assets" include both real and personal property and assets, including a business and investments.

TEX.FAM.CODE ANN. § 14.053(e) (Vernon Supp.1994) (repealed 1995) (current version at TEX.FAM.CODE ANN. § 154.067) (Vernon 1996).

Regardless of what use appellant made of the capital gains on the sale of his assets, the capital gain realized on their sale may nonetheless be considered by the court in comparing the ability of the obligor to pay at the time of the divorce and his ability to pay at

---

**3.** Section 14.053(b) is the correct provision. Appellant's brief referring to the "net resources definition" cites us to "§ 14.053(c)."

**4.** Section 154.062(c)(1), which, with some alterations, replaces Section 14.053(b), now provides that "return of principal or capital" is excluded as a net resource.

the time of the modification hearing. It should be noted, however, that whether one includes the capital gain from sale of assets as part of Farish's net resources or whether one excludes them, the same conclusion is warranted. Farish's income increased substantially between 1987 and the date of the modification hearing.

■ Under point of error one, appellant also contends that the *substantial difference* between the amount of the presumptive award under the guidelines (which appellant alleges to be a minimum of $1,642 and a maximum of $1,800) and the amount of child support ($4,500) of which complaint is made, by itself constitutes a material and substantial change. *See Moore v. Moore,* 898 S.W.2d 355 (Tex.App.—San Antonio 1995, no writ); *In the Matter of the Marriage of Edwards,* 804 S.W.2d 653 (Tex.App.—Amarillo, 1991, no writ); TEX.FAM.CODE ANN. § 14.056(a) (Vernon Supp.1994) (repealed 1995) (current version at TEX.FAM.CODE ANN. §§ 156.402, 156.405) (Vernon 1996). However, we do not adopt the position that a substantial difference between the presumptive amount under the child support guidelines and the amount under the order being complained of automatically requires a finding of material and substantial change. Although the trial court *may* consider the guidelines in TEX.FAM. CODE ANN. § 14.055 (Vernon Supp.1994) (repealed 1995) (current version at TEX.FAM. CODE ANN. §§ 154.125, 154.126) (Vernon 1996) in making its determination as to whether or not a modification of child support is warranted, a prior child support order which is not in compliance with the guidelines does not automatically establish a mate-

rial and substantial change in circumstances. *Cole v. Cole,* 882 S.W.2d 90, 92 (Tex.App.— Houston [14th Dist.] 1994, writ denied). The Family Code states:

> If the amount of support of a child contained in the order sought to be modified is not in substantial compliance with the guidelines, this *may* warrant a modification of a prior order in accordance with the guidelines if the modification is in the best interest of the child. (emphasis added)

TEX.FAM.CODE ANN. § 14.056(a).

■ It is discretionary with the court as to whether to consider the guidelines at all in determining if a material and substantial change has occurred; if the court does consider the guidelines, it is likewise within the court's discretion as to what weight to give the results of the application of the guidelines to net resources.[5] Appellant in this case set out to establish a material and substantial change in circumstances. The trial court concluded, however, that he failed to meet his burden of proof. Rather than suffering a downturn, his finances actually improved; the evidence established that his salary and other income significantly increased while his debt load substantially decreased.

From the sale of forty-one (41) assets which he was awarded in the divorce decree, appellant testified he received $3.1 million. This amount was, of course, in addition to the sums he received from wages, dividends, and interest each year. Out of the $3.1 million, approximately $411,000 went to child support for five years, while approximately $2.9 million was put to other uses. Of the $2.9

---

5. This court has first-hand awareness of the difficulty of interpreting two of the historical and statutory notes which follow Section 14.08, the modification statute. These notes, which accompanied acts of the legislature approved on June 18, 1993, are set out below:

> Section 11(b) and (c) of Acts 1993, 73rd Leg., ch. 766 provides:
> (b) This Act applies to an original or modified order in a suit affecting the parent-child relationship under Title 2, Family Code, made on or after that date. The change made by this Act to Section 14.08(d), Family Code, applies only to a proceeding under that section in which a hearing has not been held before the effective date of this Act.

> (c) The enactment of the amendments made by this Act does not affect the validity or obligations, terms, and conditions of an order in a suit affecting the parent-child relationship made before the effective date of this Act, and *this Act does not constitute a change of circumstances under Section 14.08, Family Code.* (emphasis added)
> Section 27(d) of Acts 1993, 73rd Leg. ch. 798 provides:
> *The enactment of this Act is sufficient by itself to constitute a material and substantial change* in the circumstances of a child for whose benefit a child support order has been entered to warrant modification of the order *under Section 14.08, Family Code.* (emphasis added)

million, most went to creditors; $90,000 went to make a down payment on his new home, which he purchased for $440,000, leaving a mortgage of $350,000; $100,000 was used to remodel the home; $30,000 went for furniture; $50,000 was spent on a diamond ring. There were also trips to Europe, the Bahamas, and Hawaii.

By the time of the modification hearing in October 1993, appellant had reduced his debt load from $5.1 million to $825,000. That amounts to a reduction of approximately 84% of debt. In short, Farish sold off assets of $3.1 million; with that $3.1 million he managed to reduce his debt load by $4 million.

Of the $825,000 remaining in debt, $350,000 represents the mortgage on the home purchased by appellant some time after his divorce from appellee. His separate property liabilities were approximately $573,000 as of December 1992. After the sale of bank stock in 1993 for $300,000 and the payment of $206,000 to extinguish a debt, he further reduced his separate property debts down to approximately $326,000. Therefore, the only debt appellant was paying on at the date of the modification hearing (October 1993) was his house mortgage (a community debt) plus his separate property debt of $325,000. Debt-wise, he was in a far better position at the time of the modification hearing than he was at the time of divorce. Furthermore, his salary more than tripled since the divorce. Any decrease in net worth, because of the sale of assets, is more than offset by his increase in salary and other income.

 Appellant further claims that the obligation to support another child, who is not under the child support order complained of, constitutes a material and substantial change by itself. However, given appellant's financial circumstances, we do not agree that another child, without additional evidence, represents such a change in his financial condition that the requisite standard of "material and substantial change" is met. Neither do we perceive that the increases in private school tuition for the three minor children under the child support order fall within the category of material and substantial change. Under the divorce decree, appellant agreed to and was ordered to pay all

*increases* in tuition. Increases were to be expected, and, indeed, anticipated, or they would not have been provided for in the divorce decree. The tuition increases, likewise, do not constitute a material and substantial change.

The trial court in the instant case had the testimony of Farish before it, along with his income tax returns and financial statements. In considering that evidence, the court correctly determined that no material and substantial change in circumstances had occurred. The trial court did not abuse its discretion in reaching that conclusion. Point of Error One is overruled.

In Points of Error Two and Three, appellant complains that the trial court's findings of fact six, seven, eight, and ten are not supported by the evidence and are against the great weight and preponderance of the evidence. Findings of fact six, seven, eight, and ten are set out below:

6. At the time of the trial of the above-captioned and numbered cause, GEORGE RICE FARISH has income significantly greater than the income he had at the time of divorce.

7. At the time of the trial of the above-captioned and numbered cause, GEORGE RICE FARISH had significantly less indebtedness than he had at the time of the divorce.

8. At the time of the trial of the above-captioned and numbered cause, the financial condition of GEORGE RICE FARISH had improved as a result of having more income and less debt.

10. The circumstances of the minor children were the same as at the time of divorce, with the exception that the amount paid for their private schooling had increased since the time of divorce.

 We disagree with appellant's assessment of the evidence. As detailed in our discussion above, there was some evidence to support findings of fact six, seven, and eight; the trial court's finding was not against the great weight and preponderance of the evidence.

As to finding of fact ten, appellant is correct in stating that testimony as to the expenses of the three minor children was not allowed into evidence, because appellee had not answered appellant's discovery question on the expenses of the children at the time of divorce. When appellee sought to introduce testimony on that issue, appellant objected, and the trial court sustained the objection. That being the case, no testimony regarding the children's expenses was admissible.

However, finding of fact ten is entirely consistent with the evidence the trial court had before it. We reiterate that it was the movant's burden to prove a material and substantial change had occurred with regard to the children. Except for the issue of tuition increase which we have already found *not* to be a material and substantial change in the children's circumstances, Farish introduced no other evidence concerning material and substantial change with regard to the children. Indeed, his own proposed "Order on Request For Amended and Additional Findings of Fact and Conclusions of Law," provides the tuition increase as the only "fact" proven as a material and substantial change as to the children. Appellant does contend, under other numerous proposed findings and in his brief, that "Dorothy Elizabeth Farish, at the hearing on the motion to modify, failed in her proof regarding the needs of the children."

Apparently lost on Farish is the complete lack of logic, and law, in support of his argument. Again, the burden was on Farish, not on the respondent, to show material and substantial change as to the children. This he did not do other than as to the tuition increase. If respondent also did not produce any evidence, for whatever reason, of material and substantial change, there was no legally sufficient evidence for the trial court to use to modify the divorce decree. Therefore, the trial court's finding that, except for the tuition increase, the circumstances of the minor children were the same as at the time of the divorce, is entirely supported by lack of evidence to the contrary. In short, Farish simply did not meet his burden on this issue. Points of Error Two and Three are overruled.

Appellant alleges in Point of Error Four that the trial court erred in its award of attorney's fees for Dorothy Farish for the following reasons:

(a) No evidence, alternatively insufficient evidence, to establish a contractual relationship between Dorothy Farish and John Pavlas;

(b) No evidence, alternatively insufficient evidence, to support the award of attorney's fees;

(c) No evidence, alternatively factually insufficient evidence, to support a determination that the award of attorney's fees was reasonable and necessary.

(d) The award of attorney's fees was an abuse of discretion.

Appellee's original answer to appellant's motion to modify included a plea for attorney's fees. Reasonable attorney's fees may be awarded as costs in any suit affecting the parent-child relationship. *See* TEX.FAM. CODE ANN. § 11.18(a) (Vernon 1986) (repealed 1995) (current version at TEX.FAM. CODE ANN. §§ 106.001, 106.002 (Vernon 1996)); *Thomas v. Thomas,* 895 S.W.2d at 898. In order to be entitled to a discretionary award of attorney's fees in a child support case, a party must file with the court an affirmative pleading requesting them unless the issue is waived or tried by consent. *Klaver v. Klaver,* 764 S.W.2d 401, 405 (Tex. App.—Fort Worth 1989, no writ). The decision to award the fees is in the sound discretion of the trial court. *Thomas,* 895 S.W.2d at 898. The evidence at trial regarding appellee's attorney's fees was specific. Appellant's attorney stipulated as to appellee's counsel's qualifications and the reasonableness of his $300 hourly fee. Appellee's counsel submitted to the court itemized statements of his services to his client; those itemized statements were admitted into evidence. Appellee's counsel also separated out the time spent on the contempt hearing from the time spent on the modification. This evidence is sufficient to support the trial court's finding and award of attorney's fees in the amount of $9,682.00. The trial court did not abuse its discretion in the award of

attorney fees. Accordingly, Point of Error Four is overruled.

The trial court's judgment is AFFIRMED.