ACCEPTED
01-14-00082-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/7/2015 6:01:53 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00082-CV

IN THE

FIRST COURT OF APPEALS

AT HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/7/2015 6:01:53 PM
CHRISTOPHER A. PRINE
Clerk

MARY LYNN KANTARA GERKE

Appellant,

V.

JAMIL "JAMES" KANTARA

Appellee.

Appealed from the 311TH District Court of

Harris County, Texas

---

## JAMIL "JAMES" KANTARA'S REPLY BRIEF
_____

Wilfried P. Schmitz
Texas Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas 77058
Tel: (281) 486-5066
Fax: (281) 486-2041
court_documents@schmitzlaw.com
Attorney for Jamil "James" Kantara

Appellee waives oral argument

## TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL 4

STATEMENT OF ORAL ARGUMENT 7

REFERENCE GUIDE 8

INDEX OF AUTHORITIES 13

ISSUES PRESENTED 15

STATEMENT OF FACTS 17

SUMMARY OF ARGUMENT 22

ARGUMENT 25

Reply to Issue 1 25

Reply to Issue 2 26

Reply to Issue 3 30

Reply to Issue 4 33

Reply to Issue 5 36

Reply to Issue 6 40

PRAYER                                    44

CERTIFICATE OF COMPLIANCE                 45

CERTIFICATE OF SERVICE                    46

# IDENTITIES OF THE PARTIES & COUNSEL

**Mary Lynn Kantara Gerke**                      Appellant

707 Almond Pointe

League City, Texas 77573

Cell: (281) 332-8858

Fax: (281) 290-0004

marykantara@gmail.com

**Ashley Tomlinson**                      Counsel for Appellant

1800 Saint James Place, Suite 620

Houston, TX 77056

Office: (713) 600-1717

Fax: (713) 600-1718

atomlinson@dalefamilylaw.com

**Jamil "James" Kantara**                      Appellee

1227 Birch Court

Friendswood, Texas  77546

**Wilfried P. Schmitz**                                    Counsel for Appellee

17040 El Camino Real, Suite 400

Houston, Texas 77058

Office: (281) 486-5066

Fax: (281) 486-2041

wilfried@schmitzlaw.com


**Douglas York**                                          Amicus Attorney

3355 W. Alabama, Suite 100

Houston, Texas 77098

Office: (713) 479-5555

Fax: (713) 586-5585

york@douglasyork.com


**Honorable Robert Newey**                                Associate Judge who

presided over trial

**Honorable Denise Pratt**                    Former Presiding Judge

Of the 311th District

Court


**Honorable Alicia K. Franklin**                    Presiding Judge of the

311th District Court

# Waiver of Oral Argument

Appellee waives any request for oral arguments.

# Reference Citation Guide

The Parties

Appellant, Mary Lynn Kantara Gerke            "Mary"

      Petitioner in trial

Appellee, Jamil "James" Kantara             "James"

      Respondent and Counter-petitioner in trial

The Record on Appeal

Appellee is unable to correlate the clerk's record, supplemental clerk's record, and the reporter's record cited in Appellant's brief with the complete transcript filed by the District Clerk with this Court of Appeals. Appellee's brief will refer to the record on appeal using the same designation as used by the Clerk and the Court Reporter as follows:

Clerk's record                                  "CR __" (page number)

(filed February 26, 2014)

Supplemental Clerk's Record                      "CRS1 __" (page number)

(filed October 1, 2014)

Supplemental Clerk's Record                      "CRS2 __" (page number)

(filed November 7, 2014)

Supplemental Clerk's Record                      "CRS3 __" (page number)

(filed November 17, 2014)

Supplemental Clerk's Record                      "CRS4 __ " (page number)

(filed November 24, 2014)

Reporter's Record Vol 1          "RR1 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 2          "RR2 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 3          "RR3 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 4          "RR4 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 5          "RR5 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 6      "RR6 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 7      "RR7 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 8      "RR8 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 9      "RR9 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 10     "RR10 __" (vol: page number)

(filed February 24, 2014)

Reporter's Record Vol 11                 "RR11 __" (vol: page number)

     (filed February 24, 2014)

Reporter's Record Vol 12                 "RR12 __" (vol: page number)

     (filed February 24, 2014)

Reporter's Record Vol 13                 "RR13 __" (vol: page number)

     (filed February 24, 2014)

Reporter's Record Vol 0                  "RR0 __" (vol: page number)

     (filed October 30, 2014)

# INDEX OF AUTHORITIES

**<u>Cases</u>**

*Bailey v. Rodriguez*, 351 S.W.3d 424 (Tex. App. El Paso 2011)…………p. 41

*Bruni v. Bruni*, 924 S.W.2d 366 (Tex. 1996)……………………………..p. 40

*Davis v. Huey*, 571 S.W.2d 859 (Tex. 1978)……………………………..p. 41

*Farish v. Farish*, 921 S.W.2d 538 (Tex.App.—
Beaumont 1996, no writ)……………………………………………………p. 40

*Flowers v. Flowers*, 407 S.W.3d 452 (Tex. App. Houston
[14th Dist.] 2013)…………………………………………………p. 28, 29, 32

*Greene v. Young*, 174 S.W.3d 291 (Tex. App. Houston [1st Dist.]
2005)………………………………………………………………………p. 32

*Holley v. Holley*, 864 S.W.2d 703 (Tex. App. Houston [1st Dist.]
1993, writ denied)………………………………………………………p. 41

In re B.L.D., 113 S.W.3d 340, 350 (Tex. 2003)………………………...p. 26

In the Interest of Pecht, 874 S.W.2d 797 (Tex. App.—Texarkana
1994, no writ)……………………………………………………………p. 40

*Mattox v. Jackson*, 336 S.W.3d 759 (Tex. App. Houston 1st Dist.
2011)……………………………………………………………………..p. 41

*Mansions in the Forest, L.P. v. Montgomery County*,
365 S.W.3d 314 (Tex 2012)…………………………………………………...p. 26

*Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982)……………………p. 26

*Sterling v. Alexander*, 99 S.W.3d 793 (Tex. App. Houston
[14th Dist.] 2003. pet. denied)…………………………………………....p. 39

*Tittizer v. Union Gas Corp.*, 171 S.W.3d 857 (Tex. 2005)……………..p. 35, 37

*Tucker v. Thomas*, 419 S.W.3d 292 (Tex. 2013)………………………..p. 39

*Wolters v. White*, 659 S.W.2d 885 (Tex.App.—San Antonio
1983, writ dism'd)…………………………………………………………p. 40

*Worford v. Stamper*, 801 S.W.2d 108 (Tex. 1990)……………………….p. 41

**Statutes**

TFC § 106.002……………………………………….p. 16, 24, 37 40, 42, 43

TFC § 156.005…………………………………p. 15, 16, 23, 24, 36, 39, 40, 42, 43

TFC § 153.132……………………………………………………………...p. 25

**Rules**

TEX. R. App. P. 38.1(h)……………....................................................p. 39

TEX R. App 33.1………………………………………………………….p. 26

# ISSUES PRESENTED

Reply to Issue No. 1: Appellee admits the modification of the parental rights was not plead, but Mary failed to preserve the error for appeal.

Reply to Issue No. 2: The trial court did not modify the existing 2010 orders regarding James' exclusive right to make medical, education, and welfare decisions on behalf of the children, but only stated which method should be used.

Reply to Issue No. 3: The trial court did not modify the existing orders with regard to the beginning and ending times of Mary's possession of the children. Even if the trial court finds the adjustment of the beginning and ending time of Mary's possession of the children was a modification, the beginning and ending time of Mary's possession of the children was tried by consent. In addition, termination of Mary's mid-week possession was tried by consent.

Reply to Issue No. 4: The issues regarding passports and travel restrictions were both pled and tried.

Reply to Issue No. 5: There is ample evidence in the record to support the Court's finding, Mary frivolously filed her suit for modification, the suit was designed to harass James, and award of attorney fees under TFC §156.005 is not a sanction.

Reply to Issue No. 6: There is ample evidence for the award of attorney's fees under TFC §106.002 and/or §156.005

# STATEMENT OF FACTS

On May 11, 2011, Appellant, Mary, filed her suit for modification (RR4_ 71:16-17) against James seeking to modify a prior modification order dated April 15, 2010 (hereinafter the "2010 Order") (CRS1_3).  Please note, this was just a year after the previous modification trial.

Trial began in October 2012 and ended in August 2013.  On October 28, 2013, the Court entered its order (hereinafter the "2013 Order") (CR_29).  This is an appeal from the 2013 Order.

Mary, in her Statement of Facts, forgets or downplays the harm she has caused her children since the 2010 Order.

Evidence was presented when James told Mary about the children's medical appointments, Mary referred to James as Mr. Munchhausen (RR7_22:22-25). James testified Mary was an impediment to obtaining medical providers for the children (RR8_75:24-76:6).  Numerous complaints were filed against the children's medical providers (RR7_83:5-84:4).

- Dr. Linda Ewing-Cobb with the UT Medical Group made an assessment on Jonathan, the youngest child, during the 2010 trial (RR4_46:10-11).  Mary

admits she filed a complaint against Dr. Ewing-Cobbs (RR4_61:18-62:6) (RR5_21:10-22:4).

- Dr. Monmouth's office told James Mary filed a complaint against Dr. Monmouth (RR3_54:22-55:6). Mary denies she filed the complaint, but she suspects the complaint was filed by her boyfriend, Dr. Gerber (RR7_29:23-30:12).

Many of the children's medical providers refused to provide treatment for the children after receiving complaints or strongly worded letters from Mary.

- Dr. Ewing-Cobb refused to treat one of the children after Mary filed a complaint against her (RR4_45:21-46:18).

- Dr. Kennedy would not see or treat the children after receiving strong language emails from Mary (RR3_84:23-85:20).

- Dr. Hope Moser refused to provide any more assistance to James' children because she felt she was being harassed and abused and her professional and personal capacity was being attacked (RR8_5:20-8:11).

- Dr. Kit Harrison wasn't going near James' children and evaluate them unless James sought specific court protection for Dr. Harrison (RR6_63:1-6).

- James was unable to take the children to counselors or psychologists without Mary bombarding the counselor or psychologist with derogatory comments about James (RR4_46:18-47:2).

- Jonathan Kantara was not receiving counseling because of Mary's interference (RR4_45:19-47:20).

- The acrimony between Mary and James was so horrific it was affecting the pediatrician's ability to provide healthcare for the children (RR6_29:21-30:22).

Mary has been an impediment to the children's education.

- Mary complained about and had the elementary school diagnostician removed from the children's care (RR3_93:21-94:14).

- Mary tried to make changes to the children's school schedules even though James had the exclusive rights to educational decisions (RR3_19:13-21:6).

- Mary interfered with James' exclusive educational rights by telling school officials they are required to confer with Mary before making decisions regarding the children (RR3_34:3-11).

- Mary threatened James to go to court if James changed the school the children attended (RR3_36:14-37:12).

Mary's harassment of James.

- Mary told the children's school James was not feeding the children (RR7_11:12-12:16).

- Mary called the police and told them James had weapons in the house (RR6_80:13-22) because she *felt* he may have weapons in the house (RR6_81:7-21).

- Mary told the child's physician the child was not being fed (RR6_85:25-86:2).

- Report made to CPS James was abusing the children (RR7_13:13-14:2).

- Report made to CPS James was sexually abusing his daughter (RR7_14:18-25).

- Mary reported to CPS James had a history of psychological and physical violence (RR5_104:1-3).

- Mary did not recall reporting to school personnel the children had hygiene problems, but Mary sent shampoo and other hygiene items to the school nurse (RR7_15:20-16:24).

- Mary refused James permission to obtain the children's passports claiming "*good cause*." (RR3_66:2-15) When questioned why, Mary responded because James is of Lebanese descent (RR5_74:11-15).


At the conclusion of the trial, Judge Newey told Mary on the record she had been an obstructionist almost from the day following the hearing in the previous

case in Galveston (RR8_136:19-137:5). The Court reiterated its obstructionist finding again in its Findings of Fact (CRS3_37—FoF 4).

Mary made it abundantly clear she is going to continue her obstructionist actions until she gets what she wants (RR8_88:2-14).

# SUMMARY OF THE ARGUMENT

Appellee admits the modification of the parental rights was not plead, but Mary failed to preserve the error for appeal – this Court should overrule Mary's Issue No. 1.

The trial court did not modify the existing 2010 orders regarding James' exclusive right to make medical, education, and welfare decisions on behalf of the children, but only stated which method should be used. Even if the Court finds the requirement of consultation through "OurFamilyWizard" is a modification to the 2010 Order, the issue was tried by consent. The only thing the parties have been able to agree on is the communication method used (namely, e-mails, telephonic and in-person communication) is not working – this Court should overrule Mary's Issue No. 2.

The trial court did not modify the existing orders with regard to the beginning and ending times of Mary's possession of the children but merely adjusted the pickup and return times of the children. Even if the Court finds the adjustment of the beginning and ending times of Mary's possession of the children

is a modification to the 2010 Order, the issue was tried by consent – this Court should overrule Mary's Issue No. 3.

The trial court's removal of Mary's mid-week possession was tried by consent. The record is replete with evidence supporting the Court's decision -- this Court should overrule Mary's Issue No. 3.

The issues granting James the right to apply for the children's passports, removal of the *good cause* exception, and requiring Mary to sign passport applications for the children were pled and tried. The record is replete with evidence supporting the Court's decision. The Court's imposition of a travel restriction to the Middle East is not error and if it was error, it is invited error – this Court should overrule Mary's Issue No. 4.

There is ample evidence in the record Mary filed her modification suit frivolously and for the purpose of harassing James. It was not error for the trial court to allow additional findings of fact and conclusions of law to be filed and if it was error, it was invited error. Attorney fees under TFC §156.005 are not sanctions but are a statutory method of awarding attorney fees as costs in modification suits – this Court should overrule Mary's Issue No. 5.

There is ample evidence in the record to support the award of attorney fees under TFC §156.005 and §106.002. The amount of attorney fees are within the discretion of the trial court -- this Court should overrule Mary's Issue No. 6.

# Argument

**Reply to Issue No. 1: Appellee admits the modification of the parental rights was not plead, but Mary failed to preserve  the error for appeal.**

Argument & Authorities

At the conclusion of the trial, the Court awarded James sole managing conservatorship of the children.  At the motion for entry of judgment/motion for reconsideration, Ashley Tomlinson, attorney for Mary, pointed out there were no pleadings on file to remove the parties as joint managing conservators (RR9_15:16-19).  The Court sustained Ms. Tomlinson's objection and retained the parties as joint managing conservators; however, the Court granted James additional exclusive rights concerning the children. The Court asked Ms. Tomlinson which rights she was specifically worried about under TFC §153.132 (RR9_10:23-24). Ms. Tomlinson replied the right to consent to marriage and enlistment, the right to represent the children in legal actions, and the right to service and earnings of the children (RR9_10:25-12:6). Ms. Tomlinson failed to object there were no pleadings on file to support the modified rights.

Ms. Tomlinson's failure to specifically object there were no pleadings on file to support modifying the rights deprived the Court the ability to cure the alleged defect at the time of the hearing.

As a prerequisite to preserving a complaint for appellate review, the record must show the complaint was made to the trial court and state the grounds for the ruling the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX R. APP 33.1

A party should not be able to neglect to complain about an error at trial and then surprise his opponent on appeal. *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317 (Tex 2012), citing In re B.L.D., 113 S.W.3d 340, 350 (Tex. 2003) and *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982)

Appellee concedes he did not specifically plead for the modification of the exclusive rights awarded to James but argues Mary did not preserve error.

**Reply to Issue No. 2: The trial court did not modify the existing 2010 orders regarding James' exclusive right to make medical, education, and welfare decisions on behalf of the children, but only stated which method should be used.**

Argument & Authorities

The conflict between James and Mary has gone on for nine and a half years. (RR8_87:14-21). The prior modification order dated April 15, 2010 (hereinafter the "2010 Order") gave James certain exclusive rights with regard to the children but conditioned those rights upon James *consulting* with Mary (CRS1_8). In addition, the 2010 Order gave each parent the right to confer with the other parent *to the extent possible* before making a decision concerning the health, education, and welfare of the children (CRS1_5).

James sent Mary over 2,000 pages of emails consulting with Mary regarding the children's health, education, and welfare (RR8_98:23-99:10). Mary responded by making derogatory comments about James (RR8_65:12-13). Mary seldom communicated with James in a productive fashion (RR8_124:23-125:8). Numerous complaints were filed against the children's medical providers, school officials, and James (S*ee* Statement of Facts). James tried every type of communication possible in an effort to effectively communicate with Mary (RR8_125:1-8). James testified without court intervention, the conflict will not stop (RR8_87:14-21).

Even though James has sent over 2,000 pages of emails in consultation with Mary regarding the children's health, education and welfare, the parties are still not communicating effectively regarding scheduling children's medical appointments (RR3_89:10-91:17), educational decisions (RR3_19:4-21:6, RR3_24:9-23), and medical providers (RR2_94:10-95:10). Mary even complains the communication between the parties is poor (RR7_71:15-23).

Looking at the record, it is plain to see consultation between the parents without a stated method was not working, so the Court provided a method of consultation between the parents, which was the use of "OurFamilyWizard." (CR_54). It is important to note neither party is appealing this method of consultation.

Appellee is well aware of the recent *Flowers* decision regarding notice pleadings and trial by consent. *Flowers v. Flowers*, 407 S.W.3d 452 (Tex. App. Houston [14th Dist.] 2013). *Flowers* is distinguishable in two important respects.

First, in *Flowers*, the Court completely removed the requirement for consultation prior to Ms. Flowers exercising her exclusive rights contained in the original order. In the instant case, the Court ordered James to utilize the notification and communication facilities of "OurFamilyWizard" to consult with Mary. The Court did not remove the consultation requirement but only stated

which method should be used. Mary does not appeal the use of "OurFamilyWizard."

Second, in *Flowers*, the original order did not condition Ms. Flower's requirement of consultation with Mr. Flowers. In the instant case, James was only required to confer with Mary *to the extent possible* before making a decision concerning the health, education, and welfare of the children. There is so much "bad blood" between Mary and James, the Court simply fashioned a method wherein the parties could *confer with one another to the extent possible*.

Lastly, the parties tried the issue of method of consultation by consent. Mary claimed James was not consulting her before making decisions regarding the children. Mary and the Amicus Attorney both questioned James regarding communication with Mary (RR8_98:23-102:2, RR8_123:4-16, RR8_123:23-125:8). The Amicus specifically asked James what was the best method of communication between James and Mary (RR8_124:6-8). James stated he was at a loss what to do (RR8_125:1-8). James stated further without court intervention, the conflict would continue (RR8_87:14-21).

Mary argued the Court included the provision James has the right to consent to medical, dental, and surgical procedures on behalf of the children *with the option to consult with Mary*. Mary fails to point out James is still required to

consult with Mary prior to consenting to medical procedures just like the 2010 Order, but the 2013 Order requires the consultation go through "OurFamilyWizard." The trial court specifically addressed Mary's concerns regarding the children's medical information by requiring James to post the information on OurFamilyWizard. (RR9_7:5-10:2)

Even if the Court finds the requirement of consultation through "OurFamilyWizard" is a modification, the issue was tried by consent and neither party is appealing this method of consultation.

**Reply to Issue No. 3: The trial court did not modify the existing orders with regard to the beginning and ending times of Mary's possession of the children. Even if the trial court finds the adjustment of the beginning and ending time of Mary's possession of the children was a modification, the beginning and ending time of Mary's possession of the children was tried by consent. In addition, termination of Mary's mid-week possession was tried by consent.**

Argument and Authorities

Since the 2010 modification order, the children's well-being suffered when the children were at Mary's house on a school night. The Court found the conduct

of Mary had negatively affected the children and continuation of Mary's mid-week possession would harm the children (CRS3_37: FoF 5).

The issue of Mary's weekend possession schedule was tried before the Court (RR8_125:9-126:11). The children do not have peace at Mary's house. The children's homework was not completed when Mary returned the children to school after her weekends (RR4_36:18-24). The children came to James' house upset, complaining, even crying after Mary's possession of the children (RR4_57:21-58:17).

Mary referred to the oldest special needs child as simple and simple minded (RR6_19:3-14). The middle child was missing school exhausted, stressed out, and fatigued (RR6_26:7-12). The youngest special needs child needs structure and stability and became upset and started crying after Mary told him (i) he is autistic (RR8_11:21-22) and he should be a plumber (RR8_23:11); and (ii) witnessed his older siblings being thrown out of Mary's house (RR8_12:2-20) (RR8_13:2-11).

With respect to the Sunday return time of the children, the Court did not significantly lessen Mary's possession time but basically switched the pick-up and delivery time. The Court adjusted Mary's pickup and return time from Fridays at 6:00 p.m. until the children returned to school on the following Monday to Fridays

when the children are dismissed from school until 6:00 p.m. on Sunday. Note this change was implemented so Mary could begin her weekend possession with the children earlier and the children could settle down, relax, and have some peace on school nights.

Trial courts' judgment must conform to the pleadings; however, if issues are not raised by the pleadings and are tried by express or implied consent of the parties, these issues will be treated as if they had been raised by the pleadings. *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App. Houston [14th Dist.] 2013). To determine whether the issue was tried by consent, the Court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Greene v. Young*, 174 S.W.3d 291 (Tex. App. Houston [1st Dist.] 2005).

With respect to the pickup and return time of the children, Appellee does not believe the Court modified the 2010 Order but merely adjusted the times for the benefit of the children. Assuming arguendo this Court finds there was a modification, Appellee would argue the parties tried the issue by consent.

With respect to the removal of Mary's three-hour mid-week possession, Mary testified James didn't think the children should have mid-week visitation with Mary (RR5_28:16-18). There is ample evidence the parties argued over whether Mary should have overnight mid-week possession of the children (See

above).  Appellee concedes after a thorough search of the record, Appellee cannot point this Court to a reference wherein the parties specifically argued Mary's three-hour mid-week possession be terminated other than Mary's testimony.  Appellee believes the Court can infer from the record and Mary's statement James didn't think the children should have mid-week possession, the parties impliedly consented to trial on termination of Mary's mid-week possession.

**Reply to Issue No. 4:  The issues regarding passports and travel restrictions were both pled and tried.**

Argument & Authorities

James wanted to take his children on a cruise around the Gulf of Mexico.  Mary prevented James from taking the cruise with the children because she would not let James obtain passports for the children (RR8_81:1-83:18).

The 2010 Order provided either parent may apply for the children's passports and the other parent shall provide consent in writing within ten days unless the parent has *good cause* for withholding that consent (CRS1_3 Page 9-10 of record).  The Order did not provide for international travel restrictions.

Mary refused James permission to obtain the children's passports claiming "*good cause*" (RR3_66:2-15). When questioned why, Mary responded because James is of Lebanese descent (RR5_74:11-15). Please note, James has always been of Lebanese heritage even when he was married to Mary. Lastly, Mary told the children they would never get a passport because James was trying to eliminate Mary from the children's lives (RR7_29:4-11).

James, in his *Third Amended Petition*, plead for modifications of the passport provision (CR_4 Page 6 of the Reporter's Record). Specifically, James requested: (i) the exclusive right to apply for the children's passports and (ii) Mary be ordered to sign authorizations for international travel of the children.

Mary, in her *Fourth Amended Petition*, requested the court to: (i) restore (sic) the Court's orders restricting either party from obtaining travel passports and/or foreign travel documents for the children and (ii) limit travel to the United States (CRS1_37 Page 40). As noted above, the 2010 Order did not restrict either party from obtaining travel passports and/or foreign travel documents for the children.

During trial, Mary accused James of trying to kidnap the children and take them to Lebanon (RR13_6-8) even though James is a U.S. Citizen and has not

been out of the country in over 30 years (RR8_82:4-83:14).  James stipulated to a Lebanon travel restriction (RR8_111:1-8).

At the conclusion of the trial, the Court granted James' request for the right to apply for the children's passports and ordered Mary to execute any passport application forms for the children requested by James within 10 days of presentment of the form by James (CR_34).  In addition, Mary requested and the Court granted the travel restriction be expanded to include the Middle East (RR8_136:10-14).

If there is any error expanding the travel restriction to the Middle East, it is invited error. The doctrine of invited error provides that a party cannot complain on appeal about an action or ruling which she requested the trial court to do or make. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005).  Mary is the party who asked for expanded travel restriction to include the Middle East and if it was error for the Court to grant her request, it was invited error and Mary may not complain about it now.

**Reply to Issue No. 5: There is ample evidence in the record to support the Court's finding, Mary frivolously filed her suit for modification, the suit was designed to harass James, and award of attorney fees under TFC §156.005 is not a sanction.**

<u>Argument & Authority</u>

There are three subparts to Mary's fifth issue and each will be separately dealt with below.

<u>Invited Error</u>

Mary submitted her Additional Findings of Fact and Conclusions of Law (CRS2_3) which stated in pertinent part:

4.    Mary Gerke frivolously filed a suit for modification.

5.    Mary Gerke's suit for modification was designed to harass Respondent, Jamil "James" Kantara.

On the day of the hearing for Mary's requested additional findings, Mary withdrew her requests 6 (now 4) and 7 (now 5) and counsel for James requested Mary's withdrawn findings be submitted as James' requested findings (RR0_6:15-8:20). Please note, Mary did not withdraw her Conclusion of Law wherein she requested attorney fees be awarded pursuant to TFC§156.005 as well as TFC

§106.002. The Court had previously found Mary was an obstructionist (CRS3_37-38 FoF 4 and 8).

Mary complains the trial court did not have jurisdiction to make such findings. The Reporter's Record shows the following:

- The trial court filed its Findings of Fact and Conclusions of Law on March 27, 2014 (CRS3_37).

- Ms. Tomlinson, attorney for Mary, represented to the Court and counsel for James on October 10, 2014 she did not receive notice the Court issued its Findings of Fact and Conclusions of Law (RR0_5:15-17).

- Based upon Ms. Tomlinson's representation, the parties agreed to extend the deadline for Ms. Tomlinson to submit her requested additional findings (RR0_4:21-5:14).

- On October 30, 2014, the Court signed the Additional Findings of Fact and Conclusions of Law requested by Mary (CRS2_3-4).

The doctrine of invited error provides that a party cannot complain on appeal about an action or ruling which she requested the trial court to do or make. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005).

Mary is the party who asked for additional time to file additional findings of

fact and conclusions of law. If it was error for the Court to grant her motion for additional time, it was invited error and Mary may not complain about it now. In addition, Mary did not object to the inclusion of additional findings 4 and 5 at the hearing and any error was waived.

Mary's suit was filed frivolously and was designed to harass James.

The conflict between James and Mary has been going on for nine and a half years and without court intervention, the conflict will continue (RR8_87:14-21). Since the 2010 modification, Mary has been attempting to drain James' resources through endless litigation and ultimately force James to relinquish custody. Even if Mary could establish her suit was not frivolous, it does not foreclose the possibility the suit was designed to harass James. The history suggests that Mary's *Motion to Modify* is consistent with an overall pattern of harassing behavior directed at prolonging litigation and draining James' resources. Mary specifically told James unless she gets what she wants, it's going to cost James an exorbitant amount of money while she's representing herself with minimal cost (RR8_87:22-88:8).

The trial court found there was overwhelming evidence Mary had been an obstructionist regarding the welfare of the children since the prior modification proceeding (CRS3_37). Mary or her boyfriend filed numerous complaints against

the children's medical providers, filed complaints with CPS and the police against James, interfered with the children's educational decisions, and embarked on a campaign to harass James (*See* Statement of Facts). As further proof of Mary's continual harassment of James, three days after James told Mary he was *thinking* about changing one of the children's schools, Mary filed her *Motion to Modify* (RR7_32:10-22).

Award of attorney's fees under TFC §156.005 are not sanctions.

The Court's award of attorney fees pursuant to TFC §156.005 is not a sanction and the Court need not provide specifics to justify the findings Mary's modification suit was frivolous and for the purpose of harassing James.

A trial court may tax attorney fees as *costs* against the offending party in a modification suit if the Court finds the suit was filed frivolously or designed to harass a party. *Tucker v. Thomas*, 419 S.W.3d 292, 296 (Tex. 2013).

Additionally, Mary fails to make any argument or cite any authority in her brief requiring the Court to file specific findings supporting its finding her suit was filed frivolously and for the purpose of harassment of James other than her claim of a sanction. Therefore, Mary has waived this issue on appeal. TEX. R. App. P. 38.1(h): *Sterling v. Alexander*, 99 S.W.3d 793, 798-99 (Tex. App. Houston [14th Dist.] 2003. pet. denied).

**Reply to Issue No. 6: There is ample evidence for the award of attorney's fees under TFC §106.002 and/or §156.005**

<u>Argument & Authorities</u>

James' attorney fees were offered and proved during trial. The Court found a reduced amount of James' attorney fees was reasonable and necessary in this modification suit (CRS3_38 FoF 9). Mary does not challenge the amount of attorney fees awarded to James, nor does she challenge said fees were reasonable and necessary. Mary argues attorney fees should not be awarded as a sanction under TFC §156.005 and she cannot afford the attorney fees under TFC §106.002.

The award of attorney's fees in a suit affecting the parent-child relationship is within the trial court's discretion. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996).

Texas Family Code §106.002 and §156.005 allow for the award of attorney's fees. The trial court has discretion to render judgment for attorney's fees and costs in any suit affecting the parent-child relationship. *Farish v. Farish*, 921 S.W.2d 538, 546-47 (Tex.App.-- Beaumont 1996, no writ); *Wolters v. White*, 659 S.W.2d 885, 887-88 (Tex.App.—San Antonio 1983, writ dism'd); In the Interest of Pecht, 874 S.W.2d 797, 803 (Tex.App.--Texarkana 1994, no writ). In addition, TFC §156.005 authorizes an attorney fee award in modification

proceedings when the court believes the suit was frivolous or for the purpose of harassment.

The standard of review for a trial court's decision on award of attorney fees is abuse of discretion. The test is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Bailey v. Rodriguez*, 351 S.W.3d 424, 426 (Tex. App. El Paso 2011) citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). In making its decision, the appellate court may not substitute its judgment for that of the trial court unless the trial court's decision was so arbitrary it exceeded the bounds of reasonableness. *Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App. Houston [1st Dist.] 2011). Abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Holley v. Holley*, 864 S.W.2d 703 (Tex. App. Houston [1st Dist.] 1993, writ denied).

During trial, James' attorney fees were offered, proved, and admitted into evidence (RR10_3-27) (RR11_3-27) (RR12_3-29) (RR8_33:23-35:20) (35:24-36:9-14). During the proceedings, Mary filed over 57 motions (RR13_3-5). The trial court in its Findings of Fact and Conclusions of Law number 9 found James Kantara requested and proved attorney's fees and expenses in the amount of

$108,811.93 (CRS3_38).  The Court awarded $50,000.00 attorney's fees to Wilfried Schmitz, attorney for James, which the Court found to be reasonable and necessary.  Mary has not challenged said findings.

The trial court further found, in its Additional Conclusions of Law number 2, attorney fees would be awarded pursuant to TFC §106.002 and §156.005 (CRS2_4).

Mary claims the Court cannot award attorney fees under TFC §156.005 because her modification suit was not filed frivolously or designed to harass James. Evidence was presented which demonstrated the continual harassment by Mary of James (See Statement of Facts) and Mary's intent to continue litigating until she gets what she wants (RR8_87:22-88:8).  To prove her point, Mary filed her suit for modification three days after James told her he was *thinking* about changing one of the children's schools (RR7_32:10-22).

The Court found Mary was an obstructionist (CRS3_37) and Mary's suit was filed frivolously and designed to harass James (CRS2_3).  Mary is now asking this Court to substitute its judgment for that of the trial court albeit there was more than ample evidence to support the trial court's findings.

Additionally, the trial court awarded attorney fees under TFC §106.002. Mary does not challenge the reasonableness and necessity of James' attorney fees

but only that she cannot afford to pay them. It should be pointed out Mary earns $6,786.00 per month plus an additional $1,000.00 per month as car reimbursement for a total of $7,786.00 per month (RR7_67:17-68:1). In addition, Mary, in her affidavit attached to her brief, claimed she paid her appellate attorney over $30,000.00. The trial court heard Mary's testimony and determined $50,000.00 was reasonable in light of Mary's financial condition and obstructionist attitude.

The trial court did not abuse its discretion in awarding attorney fees under either TFC §156.005 or TFC §106.002.

# PRAYER

Even a cursory review of the evidence and the pleadings demonstrates that the trial court correctly ruled on Appellant's issues no. 1 through 6 in rendering judgment for Appellee. For the reason stated in this brief, Appellee asks the Court to overrule Appellant's issues no. 1 through 6.

Respectfully submitted,

Wilfried P. Schmitz & Associates, P.C.

BY: _____
    Wilfried P. Schmitz
Texas Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas  77058
Phone:  (281) 486-5066
Email:  Court_Documents@schmitzlaw.com
Attorney for Jamil "James" Kantara

# Certificate of Compliance

Pursuant to TRAP 9.4(i)(3), I hereby certify that this brief contains 5,039 words as determined by the word processor function excluding exempted items as listed under TRAP 9.4 (i)(1)

BY: _____
      Wilfried P. Schmitz
Texas Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas 77058
Phone: (281) 486-5066
Court_Documents@schmitzlaw.com
Attorney for Jamil "James" Kantara

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing *Jamil "James" Kantara's Reply Brief* has this 7th day of January, 2015, been sent pursuant to T.R.A.P. 9.5 (b)(1) by electronic mail, to the following:

**Mary Lynn Kantara Gerke**

707 Almond Pointe

League City, Texas 77573

marykantara@gmail.com

**Ashley Tomlinson**

1800 Saint James Place, Suite 620

Houston, TX 77056

atomlinson@dalefamilylaw.com

**Douglas York**

3355 W. Alabama, Suite 100

Houston, Texas 77098

york@douglasyork.com

BY: _____
    Wilfried P. Schmitz
Texas Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas  77058
Phone:  (281) 486-5066
Court_Documents@schmitzlaw.com
Attorney for Jamil "James" Kantara